# EXHIBIT

# A

# MASTER AGREEMENT
# FOR CONSTRUCTION SERVICES

**dated**

**January 1, 2015**

**between**

## McDONALD'S USA, LLC
**("McDonald's")**

**and**

## Freeman and Associates Contracting Corporation
**("Contractor")**

Document #: 1191209-v7

DocuSign Envelope ID: 8A8B3B041948-445-98C4-9751E76A7E9

## MASTER AGREEMENT FOR CONSTRUCTION SERVICES

THIS MASTER AGREEMENT FOR CONSTRUCTION SERVICES ("**Master Agreement**") is made as of January 1, 2015 (the "**Effective Date**") by and between McDonald's USA, LLC, a Delaware limited liability company ("**McDonald's**") and Freeman and Associates Contracting Coporation, a North Carolina Corporation (the "**Contractor**").

### PRELIMINARY STATEMENTS

A.      McDonald's is involved in developing and building restaurants and other projects (each a "**Project**") in connection with a system of restaurants in the United States. McDonald's Projects include site investigation, real estate development, building, construction, reconstruction and remodeling at various locations.

B.      Contractor provides general construction services that McDonald's may require in one or more jurisdictions in connection with Projects that McDonald's wishes to undertake.

C.      McDonald's may desire, from time to time, that Contractor perform certain services in connection with one or more of the Projects.

D.      McDonald's and Contractor are entering into this Master Agreement to confirm their respective rights and obligations with respect to the Project or Projects, if any, for which Contractor is retained.

### TERMS OF THE AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing recitals and the terms and conditions set forth in this Master Agreement, the parties agree as follows:

### ARTICLE 1

### DEFINITIONS

1.1    <u>Definitions and Capitalization</u>.  Defined terms contained in this Master Agreement, which may be identified by the capitalization of the first letter of each principal word thereof, have the meanings assigned to them in this Section.

"**Addenda**" means supplementary documentation issued prior to execution of a Project Authorization Order which clarifies or changes information stated in bidding documents.

"**ADA**" means the Americans with Disabilities Act.

"**ADAAG**" means the ADA Accessibility Guidelines.

"**Anti-Terrorism Laws**" means Executive Order 13224 issued by the President of the United States of America (or any successor Order), the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA

PATRIOT Act) of 2001 (or any successor legislation), and all other present and future federal, state and local laws, ordinances, regulations, policies, lists, Orders and any other requirements of any Governmental Authority addressing or in any way relating to terrorist acts and acts of war.

"**Applicable Laws**" means all existing and future state, federal and local laws including, without limitation, the ADA, ADAAG, Anti-Terrorism Laws, rules, regulations, statutes, treaties, codes, ordinances, permits, certificates, Orders, decrees, licenses and concessions of or any interpretation of any of the foregoing by, any Governmental Authority including, without limitation, OFAC and the Department of Justice.

"**Change**" or "**Changes**" means any addition or alternative to, or deductions or deviations from, or substitution in the Work to be performed pursuant to the Contract Documents.

"**Change Order**" means a written instrument prepared by Contractor and submitted to McDonald's for review and approval, and upon approval by McDonald's pursuant to which McDonald's and Contractor agree upon all of the following: (i) a Change; (ii) the amount of the adjustment, if any, in the Contract Sum, including the cumulative impact of all Change Orders to the date of the Change Order; and (iii) the extent of the adjustment, if any, in the Contract Time.  A Change Order may be transmitted and accepted electronically.

"**Close-Out Payment**" is defined in Section 15.2.2.

"**Confidential Information**" means this Master Agreement and any and all information, materials, data, ideas and documents (whether or not specifically labeled or identified as "confidential"), in any form or medium (whether in oral, written, electronic, graphic or other form), that are disclosed to, or developed or learned by, or that becomes known to, Contractor, any of Contractor's employees or Subcontractors in connection with this Master Agreement and/or any Project, and/or that relates to the business, operations, products, services, know how, policies, procedures, strategies, promotions, research, financial information, information regarding the cost of materials, contracting procedures, plans, equipment, specifications, construction methods or means, or Developments of McDonald's or McDonald's franchisees.  Confidential Information does not include any information that Contractor can demonstrate, by clear and convincing evidence, is publicly known through no wrongful act or breach of obligation of confidentiality; was lawfully known to Contractor prior to the time it was disclosed to or learned by Contractor during the term of this Master Agreement; or was received by Contractor from a third party not in breach of any obligation of confidentiality.

"**Contract Documents**" means this Master Agreement, together with any Project Authorization Order, the Project Manual, Change Orders, Drawings, Specifications, project schedule, instructions, purchase orders, and other documents issued by McDonald's or incorporated by reference in connection with a Project.  Bidding documents are not Contract Documents.

"**Contract Sum**" is defined in Section 7.1.

"**Contract Time**" is defined in the Project Authorization Order for each Project.

"**Contractor**" is defined in the preamble.

"**Contractor's Policies**" is defined in <u>Section 10.1.7</u>.

"**Developments**" refers collectively to any and all developments, improvements, updates, derivative works, inventions, innovations, discoveries, ideas, techniques, products, processes, modifications, alterations, changes, enhancements, adaptations and concepts that Contractor, Contractor's employees or any Subcontractors may create, design, develop or contribute to in connection with any Proprietary Materials or any Project.

"**Drawings**" means the graphic and pictorial documents showing design, location and dimensions and generally including plans, elevations, sections, details, schedules and diagrams.

"**Effective Date**" is defined in the initial preamble.

"**Final Completion**" is defined in <u>Section 7.9</u>.

"**Governmental Authority**" means any federal, provincial, state, territorial or local government, any governmental, regulatory or administrative authority, agency or commission or any court or tribunal or arbitral body.

"**Hazardous Materials**" means: (i) any substances defined as or included within the definition of "hazardous substances", "hazardous wastes", "hazardous materials", "toxic substances", "hazardous pollutants" or "toxic pollutants", as those terms are used in the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, the Hazardous Materials Transportation Act, the Toxic Substances Control Act, the Clean Air Act and the Clean Water Act, or any amendments thereto, or any regulation promulgated thereunder; (ii) any "PCBs" or "PCB items" (as defined in 40 C.F.R. § 761.3 or current issue); or (iii) "asbestos" (as defined in 40 C.F.R. § 763.63 or current issue) including, without limitation, any asbestos containing mastic securing the floor tiles at the Project site. The term "Hazardous Materials" will not be deemed to include any materials that are included in the preceding definition but which are used, stored or generated in quantities or forms that are not regulated or prohibited.

"**In Balance**" is defined in <u>Section 7.8.1</u>.

"**Indemnified Parties**" is defined in <u>Section 13.1</u>.

"**Indemnified Party**" is defined in <u>Section 13.1</u>.

"**Master Agreement**" is defined in the preamble.

"**McDonald's**" is defined in the preamble.

"**McDonald's Policies**" is defined in <u>Section 10.1.7</u>.

"**OFAC**" means the U. S. Treasury Department's Office of Foreign Asset Control or any successor department or agency.

"**Orders**" means the entry in any judicial or administrative proceeding brought under any Applicable Laws by any person, or any permanent or preliminary injunction or other judgment, order or decree.

"**OSHA**" is defined in <u>Section 3.9</u>.

"**Project**" is defined in the Preliminary Statements.

"**Project Authorization Order**" means the written authorization in the form attached to this Master Agreement as **<u>Exhibit A</u>** or such other form as determined by McDonald's from time to time, which is signed or executed by McDonald's and Contractor describing, among other things, the scope of services, schedule and compensation for each Project. A Project Authorization Order may be transmitted and accepted electronically. Each Project Authorization Order includes the terms and conditions of this Master Agreement. In the event of a conflict between the terms of a Project Authorization Order and this Master Agreement, the terms of this Master Agreement will control.

"**Project Manager**" is defined in <u>Section 2.2</u>.

"**Project Manual**" means the written manual containing additional requirements and specifications for the construction, renovation, rebuilding or remodeling, in whole or in part, of a McDonald's restaurant, as the same may be modified from time to time.

"**Proprietary Materials**" refers collectively to all tangible or intangible information or materials in any form that are developed, designed, created, prepared, produced, provided, presented or furnished by or on behalf of McDonald's in connection with this Master Agreement and/or any Project, whether or not patentable, copyrightable or otherwise subject to intellectual property protection. Proprietary Materials will include, where applicable, but are not limited to, Contract Documents, trademarks, service marks, logos, names, designs, trade dress, copy, advertisements, brochures, instruction manuals, point of purchase materials, operations manuals, videos, packaging, signs, printed materials, photographs, plans, specifications (including, without limitation, Specifications), blueprints, illustrations, transcriptions, literary materials, artistic materials, production materials, layouts, artwork, sound recordings, models, sketches, layouts, drawings (including without limitation, Drawings), CAD programs, proposals, presentations, drafts, data, plans, Developments, innovations, improvements, research, tools, analyses, charts, graphs, processes, formulas, techniques, discoveries, concepts, writings, inventions, customer data, tests, trade secrets, patents, and other intellectual property or proprietary information belonging to McDonald's. This list is for illustrative purposes and is not intended to be all-inclusive or to limit the generality or inclusive nature of the definition. Proprietary Materials may be disseminated either orally, in writing, by inspection, through computer tape, or other electronic, mechanical or visual media.

"**Punch List**" means a written description of the items of Work that remain to be completed or corrected after Substantial Completion of the Work, as prepared by Contractor and approved by McDonald's as set forth in <u>Section 7.4</u> below.

"**Real Property**" is defined in <u>Section 10.1.5</u> below.

"**Specifications**" are the written requirements for materials, equipment, construction systems, standards and workmanship and performance of related services.

"**Subcontractor**" is any service provider, person, company, materialmen, supplier or entity with which Contractor has entered into an agreement to provide services or materials in connection with any Project, and their respective subcontractors.

"**Substantial Completion**" or "**Substantially Complete**" mean that: (i) the Work and all other things necessary to accomplish the purpose and intent of the Project including, without limitation, occupancy, access, possession, use and enjoyment thereof by McDonald's, have been completed, obtained and installed in conformance with the Contract Documents and all Applicable Laws, excepting only such minor matters as do not, in the reasonable opinion of McDonald's, interfere with, or materially diminish, such access, occupancy, possession, use or enjoyment; and (ii) all applicable certificates of occupancy and other permits have been issued with respect to the Project so that McDonald's can occupy and utilize the Work for its intended use.

"**Unabsorbed Overhead**" means indirect costs not directly attributable to the work covered by a Project Authorization Order, but expended by Contractor in the operation of Contractor's business, such as corporate office expenses, executive and clerical staff salaries, insurance, taxes, advertising and marketing expenses, professional fees, and office supplies.

"**Work**" means the tasks, collectively, which Contractor is engaged by McDonald's to perform, pursuant to and as described in the Contract Documents.

1.2     <u>Interpretation</u>.  In this Master Agreement, except to the extent that the context otherwise requires:

1.2.1    Section headings are for convenience of reference only and will not affect the interpretation of this Master Agreement;

1.2.2    Defined terms include the plural as well as the singular and vice versa;

1.2.3    Words importing gender include all genders;

1.2.4    References to Sections, clauses, Schedules and Exhibits are references to Sections and clauses of, Schedules and Exhibits to, this Master Agreement;

1.2.5    References to any document or agreement including, without limitation, this Master Agreement, will be deemed to include references to such document or agreement as amended, restated, supplemented or replaced from time to time in accordance with its terms and (where applicable) subject to compliance with the requirements set forth in this Master Agreement;

1.2.6    References to any party include permitted successors and permitted assigns; and

1.2.7    Include, in all of its forms, means "including without limitation," unless the content clearly states otherwise.

## ARTICLE 2

## PROJECT AUTHORIZATION ORDERS; TERM OF MASTER AGREEMENT

2.1     Project Authorization Orders.  If McDonald's retains Contractor for a Project, McDonald's will authorize Contractor in writing to proceed with such services for the specified Project, as follows:

2.1.1   McDonald's authorization for each Project will be in the form of a Project Authorization Order. Unless expressly stated otherwise, any reference to the Project Authorization Order includes this Master Agreement.

2.1.2   Upon execution of a Project Authorization Order by McDonald's and Contractor, Contractor is authorized to and will perform the services identified in the Project Authorization Order for the corresponding Project.

2.1.3   A Project Authorization Order will be valid only if the Project Authorization Order has been signed by McDonald's and Contractor and if this Master Agreement has not been terminated or withdrawn by McDonald's; provided, however, that such Project Authorization Order will expire and be deemed withdrawn by McDonald's unless Contractor both signs and delivers the Project Authorization Order to McDonald's in such a manner that McDonald's receives it not more than 14 days after the date McDonald's delivers or issues such Project Authorization Order.

2.1.4   References in the Project Authorization Order to "Project" and "services" and similar expressions will be deemed to mean the Project and services to which the corresponding Project Authorization Order applies, except to the extent that the context of the reference clearly dictates otherwise.

2.1.5   A Project Authorization Order may set forth more specific terms and conditions, in addition to those set forth in this Master Agreement including, without limitation, the scope of work, materials and services required, schedule, payment schedule, and any other obligations which must be assumed or adopted by Contractor with respect to a particular Project.  If a conflict exists between the Project Authorization Order and this Master Agreement, then the Master Agreement will govern and control.

2.1.6   Each Project Authorization Order signed by McDonald's and Contractor will constitute a separate contract between McDonald's and Contractor.

2.1.7   Contractor acknowledges that McDonald's makes no promise that there will be any Project Authorization Orders issued to Contractor.  Contractor is not guaranteed any minimum number of Project Authorization Orders or that there will be a renewal or extension of this Master Agreement.  Contractor further acknowledges and agrees that, during the term of this Master Agreement and at all times thereafter, McDonald's is free to engage other persons or entities to perform Projects similar or identical to those Contractor has agreed to perform under any Project Authorization Order.

2.2     Project Manager.  The Project Manager is the person identified by McDonald's as having responsibility for the administration, management and oversight of a Project, and may

include the McDonald's Area Construction Manager or a third party. Contractor acknowledges that McDonald's may elect to hire third party consultants to act as agent on McDonald's behalf with respect to Projects as necessary to assist in the administration, management and oversight of the Work. Whenever the term McDonald's is used in this Master Agreement, it will be interpreted to mean McDonald's Project Manager selected by McDonald's, if any, and includes the McDonald's Area Construction Manager. McDonald's will provide notice to Contractor of any Project Manager selected in connection with a Project. The Project Manager has authority to act on McDonald's behalf in accordance with the terms of this Master Agreement. McDonald's franchisees do not have the authority to bind McDonald's.

2.3     Term of Master Agreement. McDonald's may terminate or withdraw this Master Agreement as more specifically set forth in Article 15 below. If this Master Agreement has not been terminated or withdrawn within 5 years after the Effective Date, then this Master Agreement will expire without any further action on the part of either McDonald's or Contractor at midnight on the date that is 5 years after the Effective Date; provided, however, that ongoing Work being performed under a Project Authorization Order issued during the 5 year period after the Effective Date will be completed in accordance with the terms and conditions of this Master Agreement by Contractor unless the Project Authorization Order is terminated by McDonald's. Notwithstanding anything contained in this Master Agreement to the contrary, Contractor's obligation to correct defects, warranty periods, and all warranty and indemnification obligations will survive the later of: (i) termination of this Master Agreement and any Project Authorization Order; and (ii) Final Completion of any Work performed under a Project Authorization Order issued during the 5 year period after the Effective Date.

2.4     Extension of Master Agreement. McDonald's may extend the term of the Master Agreement by delivery of written notice to Contractor.

## **ARTICLE 3**

## **CONTRACTOR'S GENERAL RESPONSIBILITIES**

3.1     Scope of Services.

3.1.1     The services to be provided by Contractor for each Project will be expressly set forth in the corresponding Project Authorization Order and the Contract Documents identified therein.

3.1.2     Contractor acknowledges that McDonald's is relying on Contractor's skills and integrity to produce a completed, operational Project suitable for McDonald's intended purposes. Unless otherwise provided in the Contract Documents, Contractor will provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, construction surveys and layouts, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

3.2     Standard of Care and Quality. The services provided under each Project Authorization Order will be performed in conformance with all Applicable Laws and the highest standards of professional skill, care and quality practiced by general contractors in the United

States with experience on projects similar to the Project who are performing such services in a professional and expert manner. Contractor will perform Contractor's services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project, which will be consistent with the time periods established in the Project Authorization Order.

3.3    Staffing. Contractor will provide sufficient organization, skilled personnel and management to carry out the requirements of each Project Authorization Order in an expeditious, economical and professional manner consistent with the best interests of McDonald's. At McDonald's request, Contractor will notify McDonald's of all employees of Contractor assigned to a Project. Contractor will enforce strict discipline and good order among Contractor's employees and other persons carrying out the Work. Contractor will retain only qualified, duly licensed persons in the state in which the Work is performed. Contractor will not permit employment of unfit persons not properly skilled in tasks assigned to them.

3.4    Supervision and Construction Procedures. Contractor will supervise and direct the Work, using Contractor's best skill and attention. Contractor will be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract Documents, unless the Contract Documents give other specific instructions concerning these matters. Contractor will be responsible to McDonald's for the acts and omissions of all Subcontractors and their agents and employees, and all other persons performing or supplying the Work.

3.5    No Joint Employer Relationship. Nothing in this Master Agreement creates or should be construed to create a joint employer relationship between McDonald's and Contractor, or any Subcontractor, employee or consultant of Contractor or any Subcontractor. To the fullest extent permitted by law, Contractor will be an independent contractor hereunder, and neither the Contractor nor any of its Subcontractors, agents, employees, or consultants will be deemed an agent, employee, joint employee, or servant of McDonald's. Neither McDonald's or Contractor have the right to act on behalf of or bind one another for any purpose. Contractor will have the sole right, obligation, and discretion to hire, assign, fire, discipline, evaluate, supervise, manage, train, assign work, define jobs, determine job content, maintain records of hours, perform payroll functions, provide benefits and insurance, including, but not limited to employee worker's compensation insurance and comprehensive general liability insurance, and determine all other terms and conditions of employment for all of Contractor's employees, agents, and/or consultants.

3.6    Permits and Approvals; Taxes. Unless otherwise specified by the Contract Documents, Contractor will obtain all licenses, permits, approvals and certificates necessary to complete the Work. Contractor will pay all taxes associated with performing the Work, including, but not limited to, sales, use and taxes on income including, without limitation, all penalties and interest thereon.

3.7    Drawings and Specifications. Contractor will keep a copy of the Drawings and Specifications at the Project site at all times. Anything mentioned in the Specifications and not shown on the Drawings or shown in the Drawings and not mentioned in the Specifications, will be of like effect as if shown and mentioned in both. If there is any difference between the Drawings and Specifications, the Specifications will govern, but the matter will be immediately submitted to McDonald's for resolution. Any Work performed without such resolution will be at

Contractor's own risk and expense.

3.8 Materials. All manufactured articles, materials and equipment will be provided new and free of defects, applied, installed, connected, erected, cleaned, conditioned and tested in accordance with the manufacturer's printed directions and specifications and as specified in the Contract Documents. Where the directions and specifications included in the Contract Documents are in conflict with the manufacturer's printed directions and specifications, Contractor will report such conflicts to McDonald's for resolution.

3.9 Inspection/Access. At all times, McDonald's will have access to the Work and the Project site wherever it is performed, and Contractor will provide proper facilities for such access and for inspection.

3.10 Safety and Health. Contractor will be solely responsible for the conduct, safety and health of Contractor's employees and agents and those of the Subcontractors, as well as the public, in connection with the Work. Without limiting the foregoing, Contractor will comply with all Applicable Laws concerning safety and health of workers and the public including, without limitation, the Occupational Safety and Health Act of 1970 ("**OSHA**") and any similar statutes. Contractor will develop, implement, maintain and enforce a safety program for the protection of persons and the Work and will provide a copy of the safety program to McDonald's upon request. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, Contractor will evaluate the jobsite safety and will be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures.

3.11 Project Site. Contractor, at Contractor's sole cost and expense, will at all times keep the Project site and adjoining premises and access roads clean of rubbish and debris caused by Contractor's operations and upon Final Completion, will remove all rubbish and all of Contractor's tools, equipment, and surplus materials and will leave the Project site clean and ready for use. If Contractor does not perform such cleaning, McDonald's may cause such cleaning to be done by others and may charge and/or withhold from Contractor the expense of such cleaning.

3.12 Separate Contractors. McDonald's reserves the right to award separate contracts in connection with other portions of a Project or other construction or operations on a Project site. Contractor will provide sufficient detail, direction, coordination, and accurate information so that each separate contractor may perform its work in an efficient, coordinated, and effective manner. The following will also apply to construction or operations performed by separate contractors: (i) Contractor will afford the separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and will connect and coordinate Contractor's construction and operations with theirs as required by the Contract Documents; and (ii) if part of the Work depends on proper execution or construction by a separate contractor, Contractor will, prior to proceeding with that portion of the Work, promptly report to McDonald's apparent discrepancies or defects in such other construction or work that would render it unsuitable for proper execution of the Work.

3.13 Restaurant Operation. When the Work involves remodeling, repair, modification or other work in a restaurant or other facility, the restaurant or other facility will remain open for

business unless the Project Authorization expressly provides otherwise, and Contractor will schedule and perform the Work in such a manner so as not to disrupt the operation of the restaurant or other facility and will coordinate with McDonald's so there will be no unreasonable interference with restaurant, drive-thru or facility operations.

3.14    Notices of Commencement.  Contractor will make itself aware of and comply (or facilitate McDonald's compliance) with all Applicable Laws that mandate or allow preparation and/or recording and/or posting of a notice of commencement or similar instrument in connection with the performance of the Work under any Project Authorization Order.

# ARTICLE 4

# SUBCONTRACTING

4.1    Identification of Subcontractors.    Prior to the execution of each Project Authorization Order, Contractor will furnish in writing to McDonald's the names of all Subcontractors (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work and with whom Contractor has a direct contract.  Contractor will not contract with a proposed person or entity to whom McDonald's has made objection.

4.2    Subcontracts.    By appropriate written agreement, Contractor will require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to Contractor by the terms of the Contract Documents, and to assume toward Contractor all of the obligations and responsibilities including, without limitation, the responsibility for safety of the Subcontractor's work, which Contractor assumes toward McDonald's.    Each subcontract agreement will preserve and protect the rights of McDonald's under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights.  A copy of all subcontracts will be furnished to McDonald's upon request. Each subcontract will include, without limitation, express provisions requiring: (i) assignment of such contract to McDonald's (or McDonald's designee, including any substitute general contractor selected by McDonald's) by Contractor, with such assignment being effective upon written notice by McDonald's to Contractor and Subcontractor; and (ii) Subcontractor's compliance with the current McDonald's Code of Conduct and Ethics for Consultants.    In addition, Contractor will require all Subcontractors to advise their respective employees working on a Project of the requirements of the McDonald's Code of Conduct and Ethics for Consultants.

4.3    McDonald's Payment to Subcontractors.

4.3.1    Any payments made under a Project Authorization Order by McDonald's to Contractor for Work performed (including materials furnished), will be held in trust by Contractor, as trustee, for those Subcontractors and suppliers who did work or furnished materials, or both, for purposes of paying those Subcontractors and suppliers.  Upon receipt of payment from McDonald's, Contractor will apply such trust funds first to the payment of claims of Subcontractors and suppliers of the Work before application to any other purpose.

4.3.2    Contractor agrees that it will pay all Subcontractors and suppliers in a timely manner so that no claims or liens are made or filed against McDonald's or any of the

Indemnified Parties. If McDonald's receives notice of nonpayment from a Subcontractor or supplier, or if a claim is filed as a result of Contractor's non-payment, McDonald's will have the right, after 7 days' written notice to Contractor, to immediately pay the full amount of any such claim directly to the Subcontractor or supplier and deduct the same from the Contract Sum. If the unpaid portion of the Contract Sum is insufficient to cover the amount due McDonald's, Contractor will pay the difference to McDonald's immediately upon request or McDonald's may deduct the same from the any payment due to Contractor under any other Project Authorization Order or agreement under which Contractor is performing Work for McDonald's. McDonald's will also, in its sole discretion, have the right and option to make any and all payments by checks payable to Contractor and Subcontractors and materialmen jointly.

4.3.3 Contractor will not permit or suffer any mechanic's or other similar lien filed by any Subcontractor or supplier to remain upon the premises of any Indemnified Parties and will satisfy and have discharged any lien so filed within 7 days of its filing or such earlier period as may be necessary to avoid enforcement thereof. Where McDonald's is satisfied that a legitimate dispute exists concerning the sums due a Subcontractor or supplier, Contractor may provide a bond discharging any unreasonable and improper lien which Contractor desires to contest. In the event Contractor should fail or refuse to cause any such mechanic's or other similar lien promptly to be discharged or bonded off as required above, McDonald's, after giving Contractor 7 days' written notice of McDonald's intention so to do, will have the right, but not the obligation, to: (i) bond over such lien and such payment incurred by McDonald's will be deducted from the Contract Sum, or at McDonald's option; or (ii) pay the full amount of the lien directly to the Subcontractor or supplier and deduct the same from the any payment due to Contractor under the subject Project Authorization Order or any other Project Authorization Order or agreement under which Contractor is performing Work for McDonald's. If the unpaid portion of the Contract Sum is insufficient to cover the amount due McDonald's, Contractor will pay the difference to McDonald's immediately upon request.

4.3.4 Nothing contained in this Master Agreement will create any obligation on the part of McDonald's to make any payments to any Subcontractor, and no payment by McDonald's to any Subcontractor will create any obligation to make any further payments to any Subcontractor. Contractor waives any and all claims or causes of action Contractor has or may have against McDonald's for payments that are made by McDonald's under this Article.

## ARTICLE 5

## CONTRACTOR'S REPRESENTATIONS AND WARRANTIES

5.1    Master Agreement. By executing this Master Agreement, Contractor makes the following representations and warranties to McDonald's:

5.1.1    Contractor has the full power and authority necessary to enter into this Master Agreement;

5.1.2    this Master Agreement has been duly authorized by all necessary action on the part of Contractor;

5.1.3    Contractor has not entered into any agreement with any other entity that

DocuSign Envelope ID: 8A8B3B01-2948-4625-9834-D47B1E76A7F0

contains restrictive provisions regarding confidentiality and/or non-competition that may impair Contractor's ability to comply with the requirements of this Master Agreement;

5.1.4     the execution by Contractor of this Master Agreement will not breach or violate any other agreement to which Contractor is a party;

5.1.5     neither Contractor nor Contractor's officers and directors controlling Contractor are acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by the United States Treasury Department as a Specially Designated National and Blocked Person, or for or on behalf of any person, group, entity, or nation designated in Presidential Executive Order 13224 as a person who commits, threatens to commit, or supports terrorism; and that Contractor is not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity or nation;

5.1.6     at all times during the term of this Master Agreement and the performance of services under a Project Authorization Order, Contractor will strictly adhere to the McDonald's Code of Conduct for Suppliers and McDonald's Code of Conduct and Ethics for Consultants as such documents may be revised from time to time, a current copy of which is attached to this Master Agreement as **Exhibit B** and **Exhibit C**, respectively;

5.1.7     at all times during the term of this Master Agreement and the performance of services under a Project Authorization Order, Contractor and all Subcontractors will use and implement the most current version of the Project Manual;

5.1.8     at all times during the term of this Master Agreement and the performance of services under a Project Authorization Order, Contractor will not consult or communicate with any other contractors who are or may be providing services to McDonald's regarding matters which may affect the fair and competitive procurement of services by McDonald's, including, without limitation: (i) prices; (ii) methods, factors or formulas used to calculate prices; (iii) the intention or decision to submit a bid for a Project or the contents of a bid submitted by Contractor; (iv) the submission of a bid which does not meet the specifications required by McDonald's; or (v) the quality, quantity, specifications or delivery of services to McDonalds, except as expressly authorized in writing by McDonald's; and

5.1.9     the Work to be performed under the Contract Documents will be performed in full compliance with all Applicable Laws.

5.2     <u>Project Authorization Order</u>.     By executing a Project Authorization Order, Contractor makes the following representations and warranties to McDonald's:

5.2.1     each of the representations and warranties set forth in <u>Section 5.1</u> of the Master Agreement are true and correct in all respects.

5.2.2     Contractor is technically, financially and legally ready, willing and able to perform the Work set forth in the Project Authorization Order and is familiar and knowledgeable about applicable governmental requirements and industry standards to the extent necessary to carry out Contractor's duties in a professional, complete and competent manner.  Contractor has the requisite personnel, competence, skill and physical resources to perform the Work and it will

maintain the capability, experience, training, registrations, licenses, permits and governmental approvals required to perform the Work;

5.2.3    the Contract Documents are full and complete and that the Drawings, the Specifications, and all Addenda are sufficient to enable Contractor to construct the Work outlined therein in accordance with Applicable Laws and otherwise to fulfill all Contractor's obligations under the Project Authorization Order;

5.2.4    Contractor has visited the site, examined all conditions affecting the Work, is fully familiar with all of the conditions on the site and affecting the same, and, having carefully examined all Contract Documents and Applicable Laws, there are no discrepancies or omissions in the Contract Documents.  If Contractor proceeds with Work knowing of any error, inconsistency or omission in the Contract Documents, or if by reasonable study of the Contract Documents, Contractor could have discovered such, Contractor will bear all costs arising therefrom.  Any difficulties which may be encountered in the execution of the Work and which result from failure of Contractor to make the necessary examination and investigation of the proposed Work site or as a result of Contractor's failure to seek clarification of the Contract Documents will not excuse any failure or omission on the part of Contractor to fulfill the requirements of the Contract Documents and will not be accepted as the basis for any claim whatsoever for extra compensation or extension of the schedule for performance of the Work;

5.2.5    the Work to be performed under the Contract Documents will be performed in a first class, workmanlike manner in conformity with the highest standards applicable to such Work and will comply fully in all respects with all requirements of the Contract Documents.  The equipment and materials furnished pursuant to the Contract Documents will be new and of first class quality.  Contractor will not substitute other equipment or materials specified in the Contract Documents without the prior written consent of McDonald's;

5.2.6    the Work to be performed under the Contract Documents will be performed in full compliance with all Applicable Laws; and

5.2.7    the Contract Time is a reasonable period in which to complete the Work.

5.3    Correction of Defective Work; Warranties Pertaining to the Work.

5.3.1    McDonald's will have the right to reject defective materials or workmanship and to require their correction.  Rejected workmanship will be satisfactorily corrected, and rejected materials will be promptly removed from the Project site, without charge to McDonald's.  If Contractor does not correct such defective workmanship within a reasonable time or remove rejected materials promptly, McDonald's may correct such defective workmanship or remove such rejected materials and charge the expense to Contractor.  Should McDonald's, at any time before Final Completion, desire to make an examination of any items of Work already completed, Contractor will, upon request, promptly furnish all necessary facilities, labor and materials therefor.  If such items of Work are found to be defective in any material respect due to the fault of Contractor or Subcontractors, Contractor will pay for all of the expenses of such examination, any demolition and any satisfactory reconstruction.  Neither the failure of McDonald's to exercise the right of inspection, nor the failure to discover defective

workmanship or materials during such inspection, will relieve Contractor of Contractor's obligation to provide materials and workmanship strictly in accordance with the Contract Documents.

5.3.2    If within 1 year from the earlier of: (i) Final Completion; or (ii) opening of the restaurant to the public if the Work is the construction of a new McDonald's restaurant, and with respect to repairs of defective Work performed by Contractor within 1 year from completion of such repairs (or within any longer warranty period prescribed by the Contract Documents), any defect in materials or services provided by Contractor under a Project Authorization Order is discovered, then, upon receipt of notice of such defect, Contractor will commence or cause the commencement of repairs promptly upon receipt of notice from McDonald's and thereafter diligently pursue the repairs to completion.  McDonald's will have the right without prejudice to any other rights or remedies available to McDonald's: (a) to make such repairs and offset the cost thereof against any amounts owed by McDonald's to Contractor, or invoice Contractor for such costs; or (b) require Contractor to refund the cost of the Work that is found to be defective.

5.3.3    Contractor will meet with McDonald's within 14 days of the end of the 11th month following Final Completion of the Work for an inspection of the materials or services provided under a Project Authorization Order.  If Contractor fails to meet with McDonald's within said 14 day period, the warranty set forth in Section 5.3.2 above will be extended day for day until the parties meet to inspect and discuss the Work provided under the subject Project Authorization Order.  All deficiencies will be noted, and a list of deficiencies will be given to Contractor.  Contractor agrees to correct all such deficiencies within 30 days after the date of the meeting to McDonald's satisfaction.  If the deficiencies are not timely corrected by Contractor, McDonald's may hire a contractor to correct the deficiencies in the Work.  Contractor agrees to promptly reimburse McDonald's for McDonald's costs to correct the deficiencies in the Work. If any deficiency in the Work cannot, with due diligence, be corrected within 30 days, Contractor agrees to set forth in writing a reasonable schedule for completion of the work that is acceptable to McDonald's.  If such schedule is not met, McDonald's may complete the corrective work and receive reimbursement from Contractor.

## ARTICLE 6

## MCDONALD'S REPRESENTATIONS AND WARRANTIES

6.1    By executing this Master Agreement, McDonald's represents and warrants to Contractor as follows:

6.1.1    McDonald's has the full power and authority necessary to enter into this Master Agreement;

6.1.2    this Master Agreement has been duly authorized by all necessary action on the part of McDonald's;

6.1.3    the execution by McDonald's of this Master Agreement will not breach or violate any other agreement to which McDonald's is a party; and

6.1.4    neither McDonald's nor McDonald's officers and directors controlling

14

McDonald's are acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by the United States Treasury Department as a Specially Designated National and Blocked Person, or for or on behalf of any person, group, entity, or nation designated in Presidential Executive Order 13224 as a person who commits, threatens to commit, or supports terrorism; and that McDonald's is not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity or nation.

## ARTICLE 7

## PAYMENTS TO CONTRACTOR

7.1     <u>Contract Sum</u>.  The **Contract Sum** is the lump sum payable to Contractor for the Work performed for each Project, as set forth in the applicable Project Authorization Order.

7.2     <u>Progress Payment Requests (Contract Sum Less Than $100,000)</u>.  Where the Contract Sum is less than $100,000, McDonald's will make 2 progress payments to Contractor. The first progress payment may be requested upon Contractor's completion of 50% of the Work. The second progress payment may be requested upon Substantial Completion and acceptance of the Work by McDonald's.  Each progress payment will be subject to McDonald's right to withhold retainage as provided in <u>Section 7.6</u> below.

7.3     <u>Progress Payment Requests (Contract Sum Greater Than $100,000)</u>.  Where the Contract Sum is $100,000 or more, McDonald's will make progress payments to Contractor which correspond to the proportionate part of the Work actually completed by Contractor and accepted by McDonald's.  Progress payments may be requested by Contractor at 20% completion, 40% completion, 60% completion, 80% completion and upon Substantial Completion and acceptance of the Work by McDonald's.  Each progress payment will be subject to McDonald's right to withhold retainage as provided in <u>Section 7.6</u>.

7.4     <u>Preparation of Punch List</u>.  Contractor will meet with McDonald's within 10 days after Substantial Completion of the Work to establish the Punch List.  McDonald's may withhold from the final progress payment an amount equal to 150% of McDonald's estimated value of the work described on the Punch List to secure Contractor's completion of such work.  Contractor further agrees that all work listed on the Punch List will be corrected within 30 days after the preparation of the Punch List.  If the work identified on the Punch List is not corrected within such 30 day period, McDonald's may: (i) hire a contractor to complete the work and deduct the costs from the funds retained from Contractor; and/or (ii) bill Contractor for the costs or any shortages in the event the amount withheld is insufficient to complete the work.

7.5     <u>Schedule of Values</u>. Each Project Authorization Order will be accompanied by a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as McDonald's may require.  The schedule of values will state the names of all Subcontractors and the amounts due each.  The schedule of values will state the value of work to be completed by Contractor's own forces.  At the direction of McDonald's, the schedule of values will include quantities, if applicable.  Contractor's overhead and profit will be carried as separate items.  The total of all items will aggregate the Contract Sum.

7.6     Timing for Progress Payments; Retainage.   Progress payments on undisputed amounts will be made by McDonald's to Contractor within 30 days following Contractor's submittal of a progress payment request and all other documentation required by this Article. Unless otherwise required by Applicable Laws, McDonald's may retain an amount equal to 10% of the amount of each progress payment, which retainage will be paid to Contractor upon Final Completion as more fully set forth in Section 7.9.  Progress payments will not be deemed to constitute acceptance of the Work by McDonald's.   Contractor will make itself aware of and promptly advise McDonald's of all Applicable Laws that mandate procedures for payments to be made under each Project Authorization Order, including, but not limited to, procedures for withholding and/or payment of retainage which are inconsistent with or not addressed within the terms of this Section.

7.7     Required Documentation for Each Progress Payment.  Each request for a progress payment delivered by Contractor will be accompanied by: (i) an application for payment in form and substance acceptable to McDonald's; (ii) original Contractor's sworn statements and original, notarized waivers of lien in form and substance acceptable to McDonald's, which sworn statements and waivers will cover and include, without limitation, all work, labor and materials, including equipment and fixtures of all kinds done, performed or furnished as of the date of the request for payment; (iii) original properly completed sworn statements and original, notarized waivers of lien in form and substance acceptable to McDonald's from each Subcontractor, which sworn statements will cover and include, without limitation, all work, labor and materials, including equipment and fixtures of all kinds done, performed or furnished as of the date of the previous request for payment, and which waivers will cover all work, labor and materials, including equipment and fixtures of all kinds, done, performed or furnished as of the previous request for which payment has been received; and (iv) such other evidence necessary to satisfy McDonald's that the Work for which payment is requested has been completed in conformance with the Contract Documents, and that all amounts which have previously been paid for Work have been properly paid to the various Subcontractors.   In the event of any discrepancy, Contractor will furnish Contractor's own written explanation to McDonald's.  If Contractor is unable to furnish any waiver or release of lien required by McDonald's, in addition to McDonald's other rights and remedies set forth in this Master Agreement, Contractor will at McDonald's request furnish a bond or place cash in escrow in an amount satisfactory to McDonald's but not less than 150% of the amount claimed, as security to protect McDonald's against such lien and/or claim.  The terms and conditions of the bond or cash escrow including, without limitation, the conditions for release thereof, will be satisfactory to McDonald's. Alternatively, McDonald's will have the right to pay all sums necessary to obtain such a waiver, release or discharge and deduct all amounts so paid from the Contract Sum.

7.8     Progress Payment Certification.  By signing an application for payment, Contractor states, certifies, and warrants to McDonald's that:

7.8.1   the schedule of values is accurate and In Balance, and reflects the proportionate cost to Contractor of performing the Work included in each line item.  The term "**In Balance**" means the cost to complete the Work as shown on the schedule of Values does not exceed the unpaid balance of the Contract Sum;

7.8.2   each portion of the Work referred to in the application for payment is completed in the percentage indicated;

7.8.3   the amount set forth in the application for payment represents the amount due and payable for the stage of the construction of the Project and such payment is not being requested in advance and is in accordance with the terms of the Contract Documents;

7.8.4   Contractor has paid Subcontractors all amounts requested pursuant to previous applications for payment and in compliance with all Applicable Laws, and Contractor has no notice of any vendor's, materialmen's, mechanic's, supplier's or other similar liens or rights to liens, chattel mortgages or conditional sales contracts pertaining to the Work covered by the subject application for payment;

7.8.5   to the best of Contractor's knowledge, the labor and services for which payment is sought have been performed in a satisfactory manner and in strict accordance with the Contract Documents;

7.8.6   Contractor waives and releases any and all claims against McDonald's for compensation, delays, hindrance, interference, extension of time, damages of any type or kind, claims, adjustments to the unpaid balance of the Contract Sum and Change Orders based on events or circumstances existing or occurring prior to the date of the application for payment in question; and

7.8.7   the Work has been performed in full compliance with all Applicable Laws.

7.9   <u>Final Completion and Required Documentation for Final Payment</u>.  "**Final Completion**" of the Work will be achieved and final payment constituting the entire unpaid balance of the Contract Sum, including all retainage, will be paid by McDonald's to Contractor, within 30 days after satisfaction of each of the following conditions: (i) Contractor's final application for payment (which will be delivered not later than 30 days following Substantial Completion of the Work); provided that the Work (including, without limitation, all work set forth on the Punch List) has been fully completed in accordance with the Contract Documents and accepted by McDonald's, except for those responsibilities of Contractor which survive final payment, and provided further that the Work has been delivered free from all liens; (ii) Contractor has delivered to McDonald's all available owner's manuals, operating instructions, manufacturer warranties applicable to the Work (or portions of the Work) and special warranties required by the Contract Documents, if any; (iii) Contractor has delivered to McDonald's final as-built drawings reflecting the completed Work; (iv) Contractor has delivered to McDonald's a final ALTA as-built survey reflecting the completed Work, easements, accurate site conditions, and all other matters required by and in accordance with McDonald's standards and requirements, as they may be change from time to time, if requested by McDonald's; (v) Contractor has delivered to McDonald's properly completed original sworn statements and original final, unconditional, notarized waivers of lien from Contractor and each Subcontractor performing any portion of the Work in form and substance acceptable to McDonald's; (vi) Contractor has delivered to McDonald's, a certificate of compliance in form acceptable to McDonald's, that all Work has been performed in compliance with the Contract Documents; (vii) Contractor has delivered to McDonald's a final certificate of occupancy or similar document issued by the appropriate Governmental Authority if required for full use, occupancy and enjoyment of the Work, as determined by McDonald's in McDonald's sole discretion; and (viii) McDonald's will have inspected the Work and determined that the Work has been satisfactorily completed (including, without limitation, all items on the Punch List, if any) in

17

accordance with the Contract Documents. By signing the final application for payment or upon receipt of the final payment and retainage, Contractor waives and releases any and all claims against McDonald's for compensation, delays, hindrance, interference, extension of time, damages of any type or kind, claims of any type or kind whether based upon or claimed to be based upon tort, statutory, contractual, or other liability, adjustments to the unpaid balance of the Contract Sum and Change Orders, and claims of any type whatsoever including, without limitation, violations of statutes, laws, and ordinances pertaining to the Work.

7.10    <u>Final Application for Payment Certification</u>. By signing and submitting the final application for payment, Contractor states, certifies and warrants to McDonald's that:

7.10.1  the schedule of values is accurate and reflects the proportionate cost to Contractor of performing the Work included in each line item;

7.10.2  each portion of the Work referred to in the application for payment is completed in the percentage indicated;

7.10.3  the amount set forth in the application for payment represents the amount due and payable for the stage of the construction of the Project and such payment is not being requested in advance and is in accordance with the terms of the Contract Documents;

7.10.4  Contractor has paid Subcontractors all amounts requested pursuant to previous applications for payment and in compliance with all Applicable Laws, and Contractor has no notice of any vendor's, materialmen's, mechanic's, supplier's or other similar liens or rights to liens, chattel mortgages or conditional sales contracts pertaining to the Work covered by the subject application for payment;

7.10.5  to the best of Contractor's knowledge, the labor and services for which payment is sought have been performed in a satisfactory manner and in strict accordance with the Contract Documents; and

7.10.6  the Work has been performed in full compliance with all Applicable Laws.

7.11    <u>Withholding Payment</u>.

7.11.1  Notwithstanding anything contained in this Master Agreement to the contrary, McDonald's may withhold payments to Contractor, in whole or in part, to the extent reasonably necessary to protect McDonald's from loss for which Contractor may be responsible including, without limitation, loss resulting from:

(i)      defective Work not remedied; or

(ii)     third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to McDonald's is provided by Contractor; or

(iii)    failure of Contractor to make payments properly to Subcontractors or for labor, materials or equipment; or

(iv)     any claim or lien is made or filed claiming that Contractor or any Subcontractor has failed to make payment for any labor, services, materials, equipment, taxes, or other items or obligations furnished or incurred for or in connection with the Work; or

(v)     damage to McDonald's property or that of a third party; or

(vi)     reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum; or

(vii)     reasonable evidence that the Work will not be completed by the time and date required by the Project Authorization Order; or

(viii)     persistent failure to carry out the Work in accordance with the Contract Documents; or

(ix)     rejection of the Work or any part of the Work by any governmental authority having jurisdiction over the Work; or

(x)     any other breach of this Master Agreement or any other agreement with McDonald's by Contractor which may result in damages to McDonald's.

7.11.2 When the above reasons for withholding payment are removed, payment will be made for amounts previously withheld.  McDonald's will not be deemed to be in default by reason of withholding payment while any of the above grounds remain uncured.  If Contractor disputes any determination of McDonald's relative to withholding progress payments, Contractor will nevertheless continue to diligently prosecute the Work.

## **ARTICLE 8**

## **CHANGES**

8.1     <u>McDonald's Right to Request Changes</u>.    Without invalidating this Master Agreement or any Project Authorization Order, at any time and from time to time during the progress of the Work, McDonald's may, by Change Order, specify any change in all or any part of the Work.  Each Change Order will describe the Change requested, stating, at a minimum, the date of the request for the Change, the proposed effective date of the Change, the Project Authorization Order applicable to the Work affected by the Change, a description of the Work proposed by the Change and any adjustments to the Contract Time and Contract Sum.

8.2     <u>Change Orders Only</u>.  A Change Order is the only manner in which a Change to the Work may be effectuated.  No other order, statement, letter, correspondence or conduct, oral or written, will be treated as a Change, nor will the same entitle Contractor to an adjustment in compensation, scheduling or any other matter.  Agreement on any Change Order will constitute a final settlement of and a waiver of and permanent bar to all claims and matters relating to the direct and indirect costs associated with a Change and any and all adjustments to the Contract Sum and Contract Time, except to the extent otherwise expressly noted in the Change Order.

8.3     Requests for Quotations.  McDonald's may request Contractor to provide price quotations and/or an estimate of the impact on the Contract Time for Changes proposed by McDonald's.  Such requests for quotations will not be considered as authorizations to proceed with Changes.  Contractor will submit to McDonald's, Contractor's response to a request for a price quotation for a proposed Change within 5 business days after Contractor's receipt of such request.  Contractor will hold any such price quotation, including the estimated impact on the Contract Time, open for the period indicated in the request for quotation, or, if no period is indicated in the request, for not less than 30 days.

## ARTICLE 9

## COMMENCEMENT AND TIME FOR COMPLETION; UNAVOIDABLE DELAYS AND LABOR DISPUTES

9.1     Commencement Date and Substantial Completion.  The date of commencement of the Work will be the date set forth in the Project Authorization Order for commencement of construction.  The time and date by which the Work must be completed will be measured from the date of commencement.

9.2     Progress and Completion.  Contractor will achieve Substantial Completion by the date set forth in the Project Authorization Order.  Time limits stated in the Contract Documents are of the essence.  No extension of the Contract Time will be permitted without the written consent of McDonald's.  If, in the opinion of McDonald's, Contractor falls behind in the progress of the Work or otherwise fails to adhere to the Contract Time, fails, refuses or neglects to supply a sufficient number of workers or to deliver materials with such promptness as to prevent delay in the progress of any portion of the Work, or fail to prosecute the Work to completion in a timely manner, then, in addition to any and all other rights and remedies McDonald's may direct Contractor to take such steps as McDonald's deems necessary or appropriate to bring the Work on schedule including, without limitation, requiring Contractor to increase the number of shifts, personnel, overtime operations, days of work, equipment or other remedies and to submit to McDonald's for McDonald's approval an outline schedule demonstrating the manner in which the required rate of progress will be regained, all without additional cost to McDonald's.

9.3     Unavoidable Delays.  Neither party will be held responsible for any delay or failure in performance of any part of this Master Agreement to the extent such failure is caused by fire, flood, explosion, war, act of terrorism, strike, embargo, civil or military authority, act of God, power blackout, earthquake, volcanic action or public enemy.  Notwithstanding the foregoing, Contractor's liability for loss or damage to McDonald's materials in Contractor's control or possession will not be modified by this provision.  In the event of any force majeure condition, the party delayed or unable to perform will use its best efforts to minimize delays and costs associated with the force majeure condition and will immediately give notice to the other party, stating the nature of the force majeure condition and the action being taken to avoid or minimize its effect.  In the event of any delay, an extension of the schedule for performance of the Work will be the only remedy available to Contractor.

9.4     Labor Disputes.  Notwithstanding anything contained in this Master Agreement to the contrary, in the event of a labor dispute which would include, among other things, union

picketing, bannering or hand-billing a Project, Contractor agrees to take all reasonable measures to resolve the labor dispute including, but not limited to, the following:

   (i) advise McDonald's of any potential labor dispute as soon as possible, and provide timely updates for the duration of the dispute;

   (ii) retain labor relations counsel reasonably acceptable to McDonald's;

   (iii) limit the breadth of the labor dispute by, among other things, erecting reserve gates and/or establishing reserve times to insulate the neutral contractors from the labor dispute;

   (iv) communicate expeditiously with the protesting union to attempt to informally resolve the dispute. Contractor agrees to hold McDonald's harmless for any costs incurred as a result of such informal resolution;

   (v) file all appropriate administrative charges or lawsuits in response to the union activity; and

   (vi) require all Subcontractors performing work at the Project site to agree in writing to the above set forth language and to the following provision:

   "In the event of any labor dispute with regard to the Project and/or Project site Subcontractor will take all reasonable measures to require Subcontractor's employees to continue working on the Project."

## ARTICLE X

## INSURANCE REQUIREMENTS; BONDING

  10.1 In connection with the services to be performed by Contractor under each Project Authorization Order, Contractor and all Subcontractors will procure and maintain the insurance coverages described below, which insurance will be placed with insurance companies rated A - IX or better by the current edition of Best's Key Rating Guide and approved in advance and in writing by McDonald's. Such insurance companies will be authorized to do business in the state where the Project is located. Notwithstanding the foregoing, McDonald's may in McDonald's sole and absolute discretion, by written amendment to this Master Agreement, modify any or all of the insurance coverages or limits after taking into consideration the scope of services to be performed and evaluating the potential risk and/or exposure to McDonald's.

  10.1.1 <u>Commercial General Liability Insurance</u>. Commercial General Liability Coverage will have coverage and terms comparable to an ISO CG-0001 form including premises operations, personal injury, products and completed operations liability, with Bodily Injury and Property Damage limits of $5,000,000 per occurrence, and Advertising and Personal Injury limits of $1,000,000 per person or organization. This insurance also will include coverage for any tort or indemnity liability assumed by Contractor under this Master Agreement. The completed operations liability coverage will be maintained for 4 years after completion of the Project.

10.1.2 <u>Workers' Compensation Insurance</u>. Workers' compensation insurance will have statutory benefits and limits which will fully comply with all applicable State and Federal requirements and contain Broad Form All States and Voluntary Compensation Endorsements and have limits not less than the statutory minimum, and Employer's Liability Insurance with limits of $1,000,000 per accident covering Contractor and Contractor's employees. Contractor's workers' compensation insurance policy or coverage also will be endorsed to provide a waiver of rights of subrogation in favor of McDonald's, McDonald's subsidiaries and affiliates, and such other parties identified in the Project Authorization Order.

10.1.3 <u>Business Automobile Liability Insurance</u>. Business automobile liability insurance including owned, non-owned, and hired vehicles will have coverage of not less than $1,000,000 for bodily injury and property damage for each accident.

10.1.4 <u>Excess Liability Insurance</u>. Excess or umbrella liability insurance in an amount of not less than $5,000,000 per occurrence and otherwise satisfying the requirements of this Article.

10.1.5 <u>Builder's Risk Insurance</u>.

10.1.5.1 McDonald's will maintain a Completed Value Form, All-Risk, Builder's Risk Insurance Policy that will insure all Real Property. **"Real Property"** is defined as the building structure or any part of the building or structure permanently secured in place on the site, including, but not limited to, foundations, walls, roofs, all building mechanical equipment, building attachments, fixtures and machinery belonging to and constituting a permanent part thereof. This policy will not cover loss of personal property of Contractor which includes, without limitation, construction supplies, materials and equipment stored at the Project site but not yet incorporated into or affixed to the Work. Notwithstanding the foregoing or anything in this Master Agreement to the contrary, Contractor will protect the Work and the Project site from damage and injury and Contractor will be solely responsible for protection of all property and the Work until Final Completion.

10.1.5.2 In the event of damage or destruction of the Real Property during construction which is covered by McDonald's Completed Value form, All-Risk, Builder's Risk Insurance Policy and not otherwise covered by Contractor's insurance or indemnity provided for in this Master Agreement, McDonald's will notify Contractor within a reasonable time after such damage or destruction as to whether or not McDonald's elects to continue with the Work. If McDonald's elects to proceed with the Work, Contractor will promptly commence completion of the Work, and McDonald's will pay to Contractor the cost, as determined by McDonald's, to rebuild or repair the damaged portion of the Work. All such payments will be made following the same procedures specified in this Master Agreement for payment of progress payments to Contractor, including, without limitation, submission of applications for payment, waivers and sworn statements. If McDonald's elects not to have the Work reconstructed or repaired, McDonald's may terminate the subject Project Authorization Order for convenience pursuant to the terms of <u>Section 15.2</u> below.

10.1.6 <u>Compliance with Law</u>. Contractor also will procure any insurance coverage required by Applicable Laws and/or Governmental Authority.

10.1.7 <u>Covered Parties</u>. As to each of the policies identified in this Section other than Workers' Compensation Insurance (collectively, "**Contractor's Policies**"), McDonald's, McDonald's subsidiaries and affiliates, and such other parties as McDonald's may identify in the Project Authorization Order, including, without limitation, McDonald's franchisee and landlord, if any, will be named as additional insureds using ISO CG 2010 and CG 2037 additional insured endorsements providing both ongoing operations and completed operations coverage. Contractor's Policies will be primary and non-contributory insurance for all parties named as an additional insured. It is agreed that any insurance, self-insured retention, deductible or fronting insurance maintained by McDonald's Corporation, whether or not primary, excess or contingent ("**McDonald's Policies**"), are policies of insurance purchased and specifically written to be excess of Contractor's Policies and will apply in excess of, and not contribute with, coverage provided by Contractor's Policies, and Contractor's Policies will be endorsed to reflect the Master Agreement. All of Contractor's Policies also will be endorsed to provide a waiver of rights of subrogation in favor of the additional insured parties.

10.2 <u>Evidence of Insurance</u>. Contractor will deliver to McDonald's, within 10 days of the date of a Project Authorization Order, certificates of insurance in form and substance satisfactory to McDonald's evidencing the required coverages, limits and endorsements. Contractor will not make changes in or allow the required insurance coverages to lapse without McDonald's prior written approval. All policies for insurance must be endorsed to contain a provision giving McDonald's 30 days prior written notice (from either Contractor or its insurer) by certified mail of any cancellation of that policy or material change in coverage. Should a notice of cancellation be issued for non-payment of premiums or any part thereof, or should Contractor fail to provide and maintain insurance as set forth in this Master Agreement, McDonald's will have the right, but will not be obligated, to pay such premium to the insurance company (if permitted to do so) or to obtain such coverage and to deduct such payment from any sums that may be due or become due to Contractor, or to seek reimbursement for such payments from Contractor. Any sums paid by McDonald's will be due and payable immediately by Contractor upon notice from McDonald's. Receipt and review by McDonald's of any insurance certificates, or failure by Contractor to deliver such insurance certificates to McDonald's, will not relieve Contractor of Contractor's obligation to comply with the insurance provisions of this Master Agreement.

10.3 <u>Payment and Performance Bonds</u>. At McDonald's election, Contractor will provide payment and performance bonds or such other form of guaranty acceptable to McDonald's on a Project by Project basis.

## <u>ARTICLE 11</u>

## **PROPRIETARY MATERIALS**

11.1 <u>Use and Ownership of Proprietary Materials</u>. McDonald's grants to Contractor a non-exclusive limited license to use the Proprietary Materials and Developments in connection with services performed for each Project in strict compliance with the terms and conditions of this Master Agreement. No other, further or different license is granted or implied, and the license grant set forth in this Section does not include the right to sublicense the Proprietary Materials or Developments for any purposes. McDonald's reserves the right, free of restriction, to use the Proprietary Materials and Developments in any manner whatsoever and to license

others to use the Proprietary Materials and Developments for any purposes. Contractor acknowledges and agrees, and Contractor will require Contractor's employees and all Subcontractors to acknowledge and agree that: (i) all Proprietary Materials and Developments are and will remain the exclusive property of McDonald's; (ii) they will not contest McDonald's ownership of or the validity of any Proprietary Materials or Developments; and (iii) they will not be a party, directly or indirectly, to any act disputing the validity of or McDonald's ownership of the Proprietary Materials or Developments, or tending to impair the value of the Proprietary Materials or Developments. McDonald's will have the right in McDonald's sole and absolute discretion to seek to register such Proprietary Materials and Developments as property belonging to McDonald's including, without limitation, filing applications to register such Proprietary Materials and Developments as trademarks, copyrights and patents, as applicable. Contractor represents and warrants that the Developments do not and will not infringe or violate any intellectual property or other proprietary or third party rights.

11.2    <u>Work for Hire/Assignment</u>.  All Developments protectable under United States copyright law will be owned by McDonald's as "works made for hire" as defined in <u>Section 101</u> of the United States Copyright Act.  If, and to the extent that, any or all of such Developments are not deemed to be a work made for hire, Contractor assigns to McDonald's all right, title and interest in and to the world-wide copyrights in such Developments.  Contractor irrevocably assigns to McDonald's all world-wide rights, title and interest in and to all trademarks, service marks, trade dress, trade secrets, patents and other intellectual property rights in such Developments.  Contractor will require any of Contractor's employees and Subcontractors who contributed to or have an interest in such Developments to irrevocably assign to McDonald's all world-wide rights, title and interest in and to all copyrights, trademarks, service marks, trade dress, patents and other intellectual property rights in such Developments, and such assignment will include moral rights.  McDonald's will be entitled to use and modify such Developments, to file copyright claims, trademark and/or patent applications thereon, and to license others to use the same free of restriction.

11.3    <u>Documentation</u>.  Contractor will promptly upon creation disclose to McDonald's any Developments.  During the term of this Master Agreement and at any time thereafter, Contractor agrees and will require Contractor's employees and Subcontractors who contributed to or have an interest in any Developments, and Contractor will require the Subcontractors to require their respective employees who contributed to or have an interest in any Developments, to execute and deliver to McDonald's, in a form approved by McDonald's, any assignments, declarations, consents, releases, documents and other instruments and to take any other reasonable steps that, in the sole judgment and discretion of McDonald's, may be necessary to protect McDonald's rights in the Developments and/or Proprietary Materials or to otherwise carry out the purposes or intent of this Master Agreement, and each such assignment, declaration, consent, release, document and instrument will contain a waiver of moral rights.

11.4    <u>Use of McDonald's Name; Photographs and Promotional Materials</u>.  Contractor agrees that it will not use: (i) any Proprietary Materials (including, without limitation, the Golden Arches Logo, the McDonald's brand, or McDonald's corporate name); or (ii) any photographs or descriptions of a Project in any of Contractor's own advertising materials, promotional materials, publicized client lists, websites, press releases or publicity materials without McDonald's prior written consent, as determined by McDonald's in McDonald's sole discretion.  Contractor will not disclose the existence of or any terms of this Master Agreement (except to Subcontractors to

the extent needed to perform services for a Project) without McDonald's prior written consent, as determined by McDonald's in McDonald's sole discretion. Contractor will require all Subcontractors to comply with the provisions of this Section.

11.5    Re-Use of Contract Documents by Contractor. Contractor will not use or allow to be used the design of a Project in any other project without the prior written consent of McDonald's, as determined by McDonald's in McDonald's sole discretion. Contractor's use of standard specification text and details are specifically excluded from the provisions of this Section.

# ARTICLE 12

# CONFIDENTIALITY

12.1    Confidentiality.   Contractor acknowledges that Contractor may learn of and have access to Confidential Information in connection with a Project. Contractor agrees that during the term of this Master Agreement and at all times thereafter, Contractor will not use, and Contractor will require Contractor's employees, and all Subcontractors not to use, Confidential Information for any purpose other than to fulfill Contractor's obligations under a Project Authorization Order. Contractor further agrees that during the term of this Master Agreement and at all times thereafter, except for the purpose of performing under this Master Agreement, Contractor will not use or disclose, and Contractor will require Contractor's employees and all Subcontractors not to use or disclose, any Confidential Information to any third party other than to their employees, agents or representatives who have a need to know and have agreed to maintain the confidentiality of same in accordance with Section 12.3 below.

12.2    Required Disclosures.    In the event that Contractor or any Subcontractor is required by Applicable Laws or as a result of any judicial, administrative or government proceeding to disclose any Confidential Information, Contractor will: (i) promptly notify McDonald's in writing prior to any such disclosure; (ii) cooperate with McDonald's to obtain a protective order or otherwise preserve the confidentiality of such Confidential Information consistent with Applicable Law; and (iii) limit any such disclosure to the minimum disclosure necessary to comply with such Applicable Law or court order.

12.3    Contractor's Obligation to Inform Others of Confidentiality Requirements. Contractor will advise each of Contractor's employees and all Subcontractors working on a Project of the above confidentiality obligations, and will require each Subcontractor to sign a confidentiality agreement in substantially the form attached to this Master Agreement as **Exhibit D**. Contractor also will require all Subcontractors to advise their respective employees working on a Project of the above confidentiality obligations and each subcontract issued by Contractor must include an indemnification provision protecting McDonald's against a breach of such obligations.

12.4    Posting of Contract Documents.    Contractor will not, without the prior written consent of McDonald's, disclose or distribute the Contract Documents by posting or making available such information in hard copy form or online or to an electronic plan room or electronic data room or similar technology as it may change from time to time. In the event McDonald's consents to the posting of the Contract Documents as described above, any access

25

must comply with the terms of this Article and any conditions imposed by McDonald's from time to time.

12.5 <u>Irreparable Harm</u>. Contractor acknowledges and agrees that any threatened or existing breach of <u>Section 12.1</u> of this Master Agreement would cause McDonald's irreparable injury for which McDonald's would have no adequate remedy at law. In each such case, Contractor acknowledges and agrees that McDonald's will be entitled to immediate injunctive relief in addition to any other rights and remedies available to McDonald's without proof of actual damages and without posting any bond or other security.

# ARTICLE 13

# INDEMNIFICATION

13.1 <u>Indemnification of McDonald's</u>. To the fullest extent permitted by law, Contractor will hold harmless, defend, protect and indemnify McDonald's, McDonald's parent, such parent's subsidiaries, and all of their respective successors, assigns, shareholders, members, partners, directors, officers, agents, affiliates, franchisees, representatives and employees (individually, each an "**Indemnified Party**" and collectively, "**Indemnified Parties**"), from any and all costs, claims, actions, suits, proceedings, judgments, damages, settlements, liabilities, losses, attorney's fees, expert fees, court costs, and other costs and expenses including, without limitation, injury to or death of persons and damage to property, economic, direct, indirect or consequential damages suffered by any person or persons and arising out of, in connection with, resulting from, or incidental to: (i) any actual or alleged acts, errors or omissions by Contractor and/or Contractor's employees, agents, representatives, Subcontractors, or any other person acting directly or indirectly through or under Contractor in connection with this Master Agreement or any Project Authorization Order, and for subrogation actions initiated by Contractor or Contractor's Workers' Compensation insurance carrier, and for any other matter based on Contractor's Workers' Compensation insurance; (ii) any actual or alleged violation of any Applicable Laws or third party rights caused by Contractor and/or Contractor's employees, agents, representatives, Subcontractors, or any other person acting directly or indirectly through or under Contractor in connection with this Master Agreement or any Project Authorization Order; (iii) except as otherwise provided in <u>Article 14</u> below, any generation, storage, handling, transportation, release, exacerbation, distribution, or disposal by Contractor or any entity for whom Contractor is responsible of any Hazardous Materials brought onto the Project site by Contractor or whose condition on the Project site was exacerbated by Contractor's actions or inaction or by the action or inaction of any person or entity for whom Contractor is responsible; (iv) any actual or alleged breach by Contractor or any of Contractor's representations, warranties and/or obligations in this Master Agreement; (v) any notice of lien, claim, claim for lien, lien, or suit to foreclose a lien filed, given, made or maintained by any Subcontractor, or anyone directly or indirectly employed or retained by them, provided that Contractor has received payments due and acknowledged by McDonald's to be due and owing pursuant to the terms of this Master Agreement are due; and (vi) any actual or alleged infringement or misappropriation of any patent, trademark, trade dress, copyright, trade secret or other intellectual or proprietary right of any third party or any actual or alleged unfair competition relating to the Developments or Contractor's or any Subcontractor's performance of services or Work pursuant to this Master Agreement.

13.2    In the event that any equipment, process or procedure employed by Contractor or any Subcontractor during the performance of this Master Agreement is held to constitute an infringement of any claim of any United States or foreign patent, trademark, trade name, copyright or similar right, or its use enjoined, Contractor will, at Contractor's option and without compensation: (i) procure for McDonald's the right to continue using such equipment, processes or procedures; (ii) replace it with a substantially equivalent non-infringing, equipment, process or procedure; or (iii) promptly modify the equipment, process or procedure so that it becomes non-infringing.

13.3    To the extent prohibited by Applicable Laws, no person or entity indemnified under the terms of this Article, or by any other provision in this Master Agreement, will be indemnified for the portion of any claims that arise from such person's or entity's own negligence, and the provisions of this Article will not be construed to require Contractor to indemnify any person or entity indemnified under this Master Agreement to the extent of such person's or entity's own negligence or to require any indemnification which would make the provisions of this Article void or unenforceable. The obligations of Contractor pursuant to this Article are not to be construed to negate or reduce any other right or obligation of indemnification which would otherwise exist as to any party or person described in this Article.

13.4    Severability.  The parties to this Master Agreement intend all of the provisions of Article to be wholly valid, enforceable and consistent with the Applicable Laws to the fullest extent permitted by any legal means, including, but not limited to, interpreting this Article as: (i) a waiver by Contractor of any limitation of liability for contribution Contractor may have otherwise been able to assert under the Applicable Laws, including, but not limited to, any applicable workers' compensation or other employee benefits law; (ii) as a waiver of any right of subrogation or contribution against McDonald's; and/or (iii) an obligation by Contractor to purchase sufficient insurance to fulfill Contractor's obligations under Article 10.  In the event any provision, term or phrase in this Article is held by a court of competent jurisdiction, arbitrator or other judicial or quasi-judicial body to be invalid, void or otherwise unenforceable, the remaining provisions will remain valid and enforceable to the fullest extent permitted by law.

13.5    General.  An Indemnified Party will be entitled to retain counsel and control the defense of any third party claim against an Indemnified Party subject to indemnification under this Article.  In its defense of any such third party claim, the Indemnified Party will act reasonably and in accordance with its good faith and business judgment.  All settlement amounts, costs and expenses will be borne by Contractor.

13.6    No Limitation on Indemnity.  In any and all claims against Indemnified Parties by any employee of Contractor or any Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts any of them may be liable, the indemnification obligation under this Article will not be limited by: (i) the limitation of liability of any applicable insurance policy; or (ii) the amount or type of damages, compensation or benefits payable by or for Contractor or a Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

13.7    Survives Termination. All provisions of this Article will survive any termination or expiration of this Master Agreement or Project Authorization Order, or completion of any Project.

DocuSign Envelope ID: 8A8B3B04-2948-4025-9834-647B1F76A7F0

## **ARTICLE 14**

## **ENVIRONMENTAL CONTAMINATION**

14.1 <u>General</u>. If McDonald's, McDonald's parent and such parent's subsidiaries, their successors, assigns, shareholders, members, partners, directors, officers, agents, franchisees, and landlords, if any, are required by any Applicable Laws or if ordered by any Governmental Authority having jurisdiction over environmental contamination, Contractor will remediate any contamination caused by Contractor, the Subcontractors, or any person or entities retained by Contractor or Subcontractor arising from or incidental to the Work including, but not limited to, release of any Hazardous Materials discovered on or from the property related to the Project in excess of applicable standards, including if such contamination impacts ground water and/or if such impacts adjacent or nearby properties, except to the extent caused by McDonald's (or McDonald's agent's, employee's, contractor's or franchisee's) negligence or willful misconduct.

14.2 <u>Contractor's Remediation Obligations</u>. If any Applicable Laws and/or Governmental Authority lawfully requires or orders Contractor to remediate, then Contractor will oversee and be responsible for developing and implementing the remediation in compliance with all Applicable Laws governing the clean-up of contamination, and such clean-up and remediation plans will be delivered to McDonald's for McDonald's review and approval and Contractor agrees that any such clean-up and remediation will be at Contractor's sole cost and expense, except to the extent caused by McDonald's (or McDonald's agent's, employee's, contractor's or franchisee's) negligence or willful misconduct.

14.3 <u>Survives Termination</u>. All provisions of this Article will survive termination or expiration of this Master Agreement or Project Authorization Order, or completion of any Project.

## **ARTICLE 15**

## **SUSPENSION OR TERMINATION**

15.1 <u>Suspension of Project Authorization Order</u>.

15.1.1 Upon written notice to Contractor, McDonald's may order Contractor to suspend all or any part of the Work provided under any Project Authorization Order. Upon receipt of a suspension notice delivered pursuant to this Section, Contractor will, unless the notice expressly directs otherwise, immediately: (i) discontinue the Work on the date specified in the notice and place no further orders and execute no additional subcontracts for materials, equipment, services, or facilities; and (ii) take all steps as are reasonably necessary to preserve and protect Work already in progress and protect materials and equipment on the Project site or in transit thereto, all upon terms acceptable to McDonald's.

15.1.2 If McDonald's suspends all or any part of the Work provided under any Project Authorization Order for reasons other than the fault of Contractor or any of the Subcontractors, or the fault of any other person or entity performing services under the Project Authorization Order, then McDonald's will pay Contractor: (i) the total cost of the Work performed to the date of suspension, less the total amount of payments previously made to Contractor or any Subcontractors; and (ii) the reasonable cost of preserving and protecting Work already performed. McDonald's will not have any obligation to pay or reimburse Contractor for any

other costs or expenses resulting from the suspension including, without limitation, lost profits and/or Unabsorbed Overhead. If the Project is suspended in whole or in part for more than 3 months, and then resumed, the Contract Sum for the remaining Work and the time by which Contractor must complete the Work will be equitably adjusted by mutual agreement of McDonald's and Contractor.

15.2    Termination of Project Authorization Order For Convenience.

15.2.1 McDonald's may terminate all or any part of the Work under any Project Authorization Order for convenience and without cause upon written notice to Contractor. Upon receipt of a termination notice delivered pursuant to this Section, Contractor will, unless the notice expressly directs otherwise, immediately: (i) discontinue the Work on the date specified in the notice and place no further orders and execute no additional subcontracts for materials, equipment, services, or facilities; (ii) procure cancellation or assignment of all subcontracts upon terms satisfactory to McDonald's; and (iii) take all steps as are reasonably necessary to preserve and protect Work already in progress and protect materials and equipment on the Project site or in transit thereto, all upon terms acceptable to McDonald's. Unless the termination notice specifies otherwise, Contractor will vacate the Project site not more than 7 days following receipt of a termination notice delivered pursuant to this Section.

15.2.2 If McDonald's terminates a Project Authorization Order for convenience then McDonald's will pay Contractor the following amounts as determined by McDonald's (collectively, the "**Close-Out Payment**"): (i) the total cost of the Work performed to the date of termination, less the total amount of payments previously made to Contractor and any Subcontractors; and (ii) the reasonable cost of preserving and protecting Work already performed until McDonald's or an assignee takes possession thereof or assumes responsibility therefor. Contractor will submit for McDonald's approval a preliminary estimate of the Close-Out Payment within 15 days following receipt of a termination notice delivered pursuant to Section 15.2.1, and a final statement of the Close-Out Payment (together with any supporting documentation requested by McDonald's) within 30 days, following receipt of a termination notice delivered pursuant to Section 15.2.1. Contractor expressly waives any right to payment and any right to claim a construction lien, mechanic's lien or supplier lien for any Close-Out Payment not submitted within 30 days following the date of the termination notice. Contractor further waives any claims for damages including, without limitation, loss of anticipated profits and/or Unabsorbed Overhead, or any other indirect or consequential damages on account of a termination effectuated pursuant to Section 15.2.1 and as the sole right and remedy of Contractor, McDonald's will pay Contractor in accordance with this Section.

15.3    Termination of Project Authorization Order For Cause.

15.3.1 If Contractor defaults in the performance of or breaches any of Contractor's covenants, agreement or obligations under this Master Agreement or any Project Authorization Order, and such default or breach continues for a period of 48 hours after written notice from McDonald's, McDonald's may, in McDonald's discretion, immediately terminate the Project Authorization Order by written notice to Contractor. Upon receipt of a notice of termination, Contractor will immediately discontinue the Work (except for any work which is reasonably necessary to preserve and protect Work already in progress and protect materials and equipment on the Project site or in transit thereto) and vacate the Project site.

29

15.3.2  Upon delivery of a notice of termination pursuant to Section 15.3.1, McDonald's may: (i) exclude Contractor from the Project site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor; (ii) accept assignment of Subcontracts; and (iii) finish the Work by whatever method McDonald's may deem expedient.

15.3.3  If McDonald's terminates a Project Authorization Order pursuant to Section 15.3, Contractor will not be entitled to receive further payment until the Work is finished.  If the unpaid balance of the Contract Sum exceeds the costs of finishing the Work including, without limitation, compensation for any design services and any other expenses made necessary thereby, and other damages incurred by McDonald's, such excess will be retained by McDonald's.  If such costs and damages exceed the unpaid balance of the Contract Sum, Contractor will pay the difference to McDonald's within 30 days after McDonald's delivery of an invoice for the same; provided, however, that McDonald's also will have the option to withhold or deduct the amount of money due to Contractor under any other Project Authorization Order as necessary to offset any amounts owed by Contractor under this Section.  This obligation for payment will survive termination of the Project Authorization Order.  Upon payment to McDonald's of any amounts due to McDonald's under this Section and Contractor's good faith compliance with the requirements of Sections 15.6 and 15.7 below, McDonald's may grant Contractor a temporary license to enter upon the Project site to recover any equipment or materials left by Contractor upon vacating the Project site.

15.4    CROSS DEFAULT.  IF CONTRACTOR IS IN DEFAULT UNDER ANY PROJECT AUTHORIZATION ORDER OR ANY OTHER AGREEMENT WITH MCDONALD'S, MCDONALD'S MAY, IN MCDONALD''S SOLE DISCRETION, TERMINATE ANY AND ALL OTHER PROJECT AUTHORIZATION ORDERS EXECUTED WITH CONTRACTOR AND/OR WITHHOLD OR OFFSET PAYMENTS DUE TO CONTRACTOR UNDER ANY OTHER PROJECT AUTHORIZATION ORDER OR ANY OTHER AGREEMENT WITH MCDONALD'S.

15.5    Termination of Master Agreement.  McDonald's may terminate or withdraw this Master Agreement at will, for no reason or for any reason, at any time.  Upon termination for cause, Contractor will be liable to McDonald's for such damages as may be provided by law or in equity by reason of the default.

15.6    Revocation of License; Delivery of Instruments of Service.  Upon written notice from McDonald's or immediately upon termination of this Master Agreement or any Project Authorization Order, Contractor's license to use any Proprietary Materials and Developments will be deemed revoked and, except as otherwise provided by law, Contractor will promptly, at McDonald's option either: (i) deliver to McDonald's all Contract Documents (in the formats required by McDonald's), Proprietary Materials, Developments and Confidential Information (including, by way of example and not of limitation, any documents or other tangible materials containing or reflecting or derived from any of the foregoing), without retaining any copies, summaries, analyses or extracts thereof; or (ii) destroy the Proprietary Materials, Developments and Confidential Information and copies, summaries or extracts thereof, and provide a written certification to McDonald's executed by an officer of Contractor that the Proprietary Materials, Developments and Confidential Information and copies, summaries or extracts thereof have been destroyed.  Notwithstanding the foregoing, all permit drawings, stamped government approved

drawings, the building permit and placards are not to be destroyed and must be returned to McDonald's.

15.7    Contractor's Additional Cooperation.    Upon any termination of this Master Agreement or any Project Authorization Order, Contractor will, at McDonald's option, either terminate or assign to McDonald's or McDonald's nominee any or all subcontracts then in effect. Further, Contractor will cooperate for a reasonable period of time to be determined by McDonald's to ensure the orderly transition of all Work to McDonald's or any alternative contractor designated by McDonald's to ensure the Work is maintained without interruption.

## ARTICLE 16

## CONTINUATION OF WORK

McDonald's and Contractor agree that the work being performed under a Project Authorization Order will not be stopped or slowed in any way during the pendency of any dispute; provided, that all monies owed for services which are not in dispute are timely paid.

## ARTICLE 17

## MISCELLANEOUS

17.1    Extent of Agreement.    Nothing contained in this Master Agreement will be deemed to create any contractual relationship between Contractor and any party other than McDonald's; nor will anything contained in this Master Agreement be deemed to give any third party any claim or right of action against McDonald's or Contractor which does not otherwise exist without regard to this Master Agreement.

17.2    Entire Agreement.  This Master Agreement and each Project Authorization Order executed by McDonald's and Contractor constitute the entire agreement of the parties respecting a Project, and any prior proposals, agreements, writings and understandings are merged into the Master Agreement and the corresponding Project Authorization Order without further force or effect.  All Exhibits identified in this Master Agreement and attached to this Master Agreement are incorporated by reference.

17.3    Notices.

17.3.1  Any notice which is required or permitted under this Master Agreement will be in writing and sent by nationally recognized overnight carrier or registered or certified United States mail, return-receipt requested and postage or other charges prepaid, addressed to the party to which directed at its address as set forth below, or to such other address as may be specified from time to time by that party in writing:

To McDonald's:

McDonald's USA, LLC
One McDonald's Plaza
Oak Brook, IL  60523
Attn:  US Legal, Director

31

With a copy to:

        McDonald's USA, LLC
        4601 Six Forks Road, Ste. 200
        Raleigh, NC  27609
        Attn:  Construction Manager


To Contractor:

        Freeman & Associates Contracting Corporation
        225 Tryon Road
        Ste. 105
        Raleigh, NC  27617
        Attn:  Ruben Freeman

With a copy to:

        _____
        _____
        _____
        _____


        17.3.2  Notices to Contractor delivered pursuant to Article 15 of this Master Agreement may be delivered to Contractor personally at the addresses set forth in Section 17.3.1 above or at a Project site.  Any such notices will be deemed properly delivered and received: (i) the same day when personally delivered; (ii) one day after deposit with Federal Express or other commercial overnight courier; or (iii) upon actual receipt or refusal as shown on the receipt if sent by certified mail, return receipt requested.

        17.4  <u>Assignment</u>.  Contractor will not assign Contractor's interest in this Master Agreement without the prior written consent of McDonald's which may be withheld in McDonald's sole and absolute discretion.  No assignment, even if consented to, will in any way reduce or eliminate the liability of the assignee for obligations accrued prior to such assignment. McDonald's may assign McDonald's interest in this Master Agreement at will.

        17.5  <u>Independent Contractor</u>.  This Master Agreement, and any document or agreement entered into in connection with this Master Agreement, will not be deemed to create any other relationship between McDonald's and Contractor, nor will any Project Authorization Order create any other relationship between McDonald's and Contractor.  Contractor will remain an independent contractor and will not have, nor represent that Contractor has, any power to bind McDonald's or to assume or create any obligation, express or implied, on behalf of McDonald's, except as expressly provided in this Master Agreement or a Project Authorization Order.

        17.6  <u>Governing Law</u>.  This Master Agreement will be governed by the internal laws of the State of Illinois.  Contractor submits to the jurisdiction and venue of the United States District Court for the Northern District of Illinois (Eastern Division) and the Circuit Court of DuPage County of Illinois in connection with all suits, actions, proceedings or other disputes

relating to this Master Agreement, provided, however, mechanics lien foreclosure actions will take place in the county where a Project is located.

17.7    Attorney's Fees.  Should either party employ an attorney or attorneys to enforce any of the provisions of this Master Agreement or to recover damages for the breach of this Master Agreement, the non-prevailing party will pay to the prevailing party all reasonable costs, damages and expenses including, without limitation, attorney's fees, expended or incurred in connection therewith, and any judgment entered in such enforcement action will include such amount as a specific line item.

17.8    Binding Effect.  This Master Agreement will be binding and inure to the benefit of the permitted respective heirs, executors, administrators and successors of the parties to this Master Agreement.

17.9    Remedies Cumulative.  No right or remedy conferred upon or reserved to McDonald's in this Master Agreement is intended to be exclusive of any other right or remedy in this Master Agreement or by law or in equity, but each will be cumulative and in addition to every other right or remedy given in this Master Agreement or now or hereafter existing at law or in equity or by statute.  The choice or employment of any one remedy by McDonald's will not preclude the assertion of any other remedies to which McDonald's may be entitled.

17.11    Survival.  Articles 3, 5, 10, 11, 12, 13, 14 and 15 will survive the termination of this Master Agreement.

17.12    Amendments.  Except as provided in Section 2.4 above, this Master Agreement or any provision of a Project Authorization Order may be waived, amended, or modified only by an instrument in writing signed by the party against whom such waiver, amendment or modification is sought to be enforced, and such written instrument will set forth specifically the provisions of the Master Agreement or Project Authorization Order that are to be so waived, amended or modified.  It is agreed by and between McDonald's and Contractor that any course of dealings as between the parties which may appear to change or modify the provisions of this Master Agreement or any other provision contained in the Contract Documents will not change or modify any provision of this Master Agreement or the Contract Documents.

17.13    Severability.  The provisions of this Master Agreement will be severable.  In the event that any provisions of this Master Agreement are held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions will remain enforceable to the fullest extent permitted by law.

17.14    Rules of Construction.  All of the parties to this Master Agreement have had the opportunity to review this Master Agreement and the opportunity to have this Master Agreement reviewed by their representatives and/or attorneys.  Therefore, no rule of construction or interpretation that disfavors the party drafting this Master Agreement will be observed and this Master Agreement will be interpreted in accordance with the fair meaning of its terms.

17.15    Counterparts. This Master Contract, any Project Authorization Order and a Purchase Order may be executed and delivered in several counterparts, each of which will be

deemed an original, but all of which will constitute one and the same document. The delivery of an executed counterpart of this Master Agreement, Project Authorization Order, Purchase Order, or amendments thereto by facsimile, PDF, attachment to an e-mail, secure electronic means (e.g. DocuSign, SignNow or HelloSign)) will constitute effective delivery of such counterpart for all purposes with the same force and effect as the delivery of an original, executed counterpart.

**IN WITNESS WHEREOF**, the parties to this Master Agreement have executed this Master Agreement as of the day and year first written above.

**McDONALD'S USA, LLC:**

**Freeman & Associates Contracting Corporation**

By: _____ *Debra L Stroud*
9833B9A4349F498...

By: _____ *Ruben Freeman*
3D7F110E15EE4B9...  _____

Name: **Debra L. Stroud**

Name: **Ruben Freeman**

Title: **VP – GM, Raleigh Region**

Title: **President**

Date: _____ 12/31/2014 _____

Date: _____ 12/11/2014 _____

DocuSign Envelope ID: 8A8B3B01-1948-4025-9834-D47B1F76A7F0

## EXHIBIT A
## FORM OF PROJECT AUTHORIZATION ORDER

### PROJECT AUTHORIZATION ORDER

**THIS PROJECT AUTHORIZATION ORDER** (this "**Project Authorization Order**") is made as of _____, 20__ by and between **McDONALD'S USA, LLC**, a Delaware limited liability company with an address of One McDonald's Plaza, Oak Brook, Illinois 60523 ("**McDonald's**"), and _____, a(n) _____ [corporation/partnership/limited liability company] with an address of _____ ("**Contractor**").

### PRELIMINARY STATEMENTS

McDonald's and Contractor previously entered into a certain Master Agreement For Construction Services dated as of _____, 20__ (together with its exhibits, the "**Master Agreement**"); and

McDonald's desires to engage Contractor and Contractor is willing to perform a new project under the terms of the Master Agreement, all as set forth more fully in this Project Authorization Order.

**NOW, THEREFORE**, in consideration of the premises, the covenants and agreements contained in the Master Agreement and in this Project Authorization Order, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

1. **Incorporation of Recitals.** The above and foregoing recitals are incorporated into and made a part of this Project Authorization Order. All capitalized terms used in this Project Authorization Order, if not otherwise specifically defined, will have the meanings and definitions prescribed in the Master Agreement.

2. **Project.** Contractor and McDonald's agree and acknowledge that the project will be deemed to be a "Project" under and governed by the terms and conditions of the Master Agreement. McDonald's engages Contractor, and Contractor agrees to provide the following services and such other services as may be requested by McDonald's

General Description of Construction:

Build/Re-Build/Renovation [*delete those that are don't apply*) of a McDonald's restaurant in the general style of _____ located at _____ Street, City of _____, County of _____, State of _____, consisting of approximately _____ square feet and _____ stories as well as a parking lot(s) including _____ parking stalls in accordance with the following plans and specifications:

Architectural Drawings issued by _____ dated _____ including, without limitation, the following drawings:

Architectural Sheet, Number _____ Revision Date_____
Site Work, Sheet Number _____ Revision Date_____
MEP, Sheet Number _____ Revision Date_____
Sheet Number _____ Revision Date_____


For Construction Drawings issued by _____, dated _____, including, without limitation, the following drawings:
Architectural Sheet, Number _____ Revision Date_____
Site Work, Sheet Number _____ Revision Date_____
MEP, Sheet Number _____ Revision Date_____
Sheet Number _____ Revision Date_____

McDonald's USA, LLC Specifications Book Issued _____, 201__.

A-1

3.   **Project Manual.**  The Work will be performed in accordance with the current version of the Project Manual.

4.   **Contract Sum.**   As compensation for Contractor performing the Project, McDonald's agrees to pay Contractor a total lump sum amount of _____.  **THE CONTRACT SUM MUST BE EXPRESSLY SET FORTH IN THIS PARAGRAPH 4 AND NOT ONLY IN AN EXHIBIT ATTACHED TO THIS PROJECT AUTHORIZATION ORDER.**  Except as explicitly specified in this Project Authorization Order, all costs and expenses incurred by Contractor in connection with the Project, the Project Authorization Order and the Master Agreement will be the responsibility of Contractor.   In addition, Contractor acknowledges and agrees that Contractor has not and will not incur any costs or expenses in reliance on securing this or any other business of McDonald's.

5.   **Commencement, Notices of Commencement, and Time for Completion.**   Contractor will commence construction of the Project within 7 business days after written notice is given by McDonald's or an authorized representative of McDonald's to Contractor, provided all necessary permits and approvals have been obtained.   Contractor will achieve Substantial Completion of the Project within _____ calendar days after commencement, as may be evidenced by the schedule attached to this Project Authorization Order (the "**Contract Time**").   Contractor will make itself aware of and comply (or facilitate Owner's compliance) with all Applicable Laws that either mandate or allow the preparation and/or recording and/or posting of a notice of commencement or similar instrument in connection with the performance of the Work under any Project Authorization Order, including, but not limited to the Applicable Laws of Florida, Georgia, Michigan, Nebraska, Ohio, Pennsylvania, South Carolina and South Dakota.

6.   **Non-Collusion Certification.**   For the purposes of the statements set forth in this Section 6, Contractor understands that the word "competitor" includes any individual or organization, other than Contractor, whether or not affiliated with Contractor, who: (i) has been requested to submit a bid in connection with the Project; or (ii) could have potentially submitted a bid in connection with the Project, based on their qualifications, abilities or experience.

Contractor confirms that its bid for the Project was derived independently from, and without consultation, communication, agreement or arrangement with, any competitor.   Without limiting the foregoing, there has been no consultation, communication, agreement or arrangement by or on behalf of Contractor with any competitor regarding:

•      prices;

•      methods, factors or formulas used to calculate prices;

•      the intention or decision to submit, or not to submit, a bid; or

•      the submission of a bid which does not meet the specifications of the invitation for bids.

In addition, there has been no consultation, communication, agreement or arrangement with any competitor by or on behalf of Contractor regarding the quality, quantity, specifications or delivery particulars of the products or services to which this Project relates, except as specifically authorized in writing by McDonald's.

The terms of this Project Authorization Order have not been, and will not be, knowingly disclosed by Contractor, directly or indirectly, to any competitor, unless otherwise required by law or as specifically authorized in writing by McDonald's.

7.   **Binding Effect.**   The terms, provisions and conditions of this Project Authorization Order will be binding upon and inure to the benefit of each respective party and their respective legal representatives, successors and assigns.

8.   **Conflict.**   In the event of a conflict between the terms of this Project Authorization Order and the Master Agreement, the terms of the Master Agreement will control.

[SIGNATURES FOLLOW ON NEXT PAGE]

**IN WITNESS WHEREOF**, the parties have caused this Project Authorization Order to be executed by their respective officers as of the date first above written.

CONTRACTOR:

[NAME]

By: _____
Print Name: _____
Title:_____

McDONALD'S:

McDONALD'S USA, LLC

By: _____
Print Name: _____
Title:_____

# EXHIBIT B



# *Supplier Code of Conduct*

At McDonald's, our Core Values are integral to how we do business, and we expect our suppliers to respect and promote these values. We seek to develop and strengthen partnerships based on transparency, collaboration and mutual respect. We recognize that our suppliers are independent businesses and the exclusive employers of their employees. However, the actions of our business partners can be attributed to McDonald's, affecting our reputation and the level of trust we have earned from customers and others. We appreciate that suppliers operate in different legal and cultural environments throughout the world. At a minimum, we require that all suppliers and their facilities meet the standards and promote the principles outlined in this Code, which are intended to advance McDonald's commitment to all aspects of sustainability (ethical, environmental, and economic). Visit www.aboutmcdonalds.com for information on McDonald's commitment to sustainability.

The provisions of this Code are in addition to, and not in lieu of, the provisions of any legal agreement or contract between a supplier and McDonald's or any of its affiliates. We expect suppliers to hold their supply chain, including subcontractors and third party labor agencies, to the same standards contained in this Code. This Code does not create any third-party beneficiary rights or benefits for suppliers, subcontractors, their respective employees or any other party.

## HUMAN RIGHTS

**UN DECLARATION OF HUMAN RIGHTS:** We expect our suppliers to conduct their activities in a manner that respects human rights as set out in The United Nations Universal Declaration of Human Rights. In addition, suppliers shall uphold the following labor practices:

**FREEDOM OF ASSOCIATION:** Suppliers shall respect the rights of workers to associate or not to associate with any group, as permitted by and in accordance with all applicable laws and regulations.

**EMPLOYMENT STATUS:** Suppliers shall employ workers who are legally authorized to work in their location and facility and are responsible for validating employees' eligibility to work status through appropriate documentation.

**EMPLOYMENT PRACTICES:** Suppliers shall not use any form of slave, forced, bonded, indentured, or involuntary prison labor. They shall not engage in human trafficking or exploitation, or import goods tainted by slavery or human trafficking. They shall not retain employees' government-issued identification, passports or work permits as a condition of employment.

**ANTI-DISCRIMINATION AND FAIR TREATMENT:** Suppliers shall promote and maintain a workplace free from discrimination and treat their employees with fairness, dignity and respect. No form of physical, sexual, psychological or verbal harassment or abuse shall be tolerated.

**WORKING HOURS AND REST DAYS:** Employees shall be allowed at least one day off every seven days, and any overtime worked shall be voluntary. If local law allows, employees may voluntarily work overtime on rest days, provided that they are allowed at least one day off within the next seven days. Continuous working days are never to exceed 21 days without a rest day.

**UNDERAGE LABOR:** Suppliers shall ensure that no underage labor has been used in the production or distribution of their goods or services. A child is any person under the minimum employment age according to the laws of the facility's country, or, in the absence of law, under the minimum age for completing required education. Suppliers shall not employ anyone younger than 14, regardless of the country's minimum working age.

**WAGES AND BENEFITS:** Suppliers shall ensure that their workers are paid lawful wages, including overtime, premium pay, and equal pay for equal work without discrimination. There shall be no disciplinary deductions from pay.

## WORKPLACE ENVIRONMENT

Suppliers shall ensure that all workers receive communication and training on emergency planning and safe work practices. In addition, suppliers shall have systems to prevent, detect and respond to potential risks to the safety, health and security of all employees.

## ENVIRONMENTAL MANAGEMENT

Suppliers are responsible for managing, measuring and minimizing the environmental impact of their facilities. Specific focus areas include air emissions, waste reduction, recovery and management, water use and disposal, and greenhouse gas emissions.

## BUSINESS INTEGRITY

**COMPLIANCE WITH LAW:** Suppliers' business activities shall comply with applicable laws and regulations in the countries and jurisdictions in which they operate. This Code applies to activities in the locations where suppliers' goods are produced, where any related services are performed, and where the goods enter the supply chain.

**ANTI-BRIBERY:** Suppliers shall not engage in any form of bribery, kickbacks, corruption, extortion or embezzlement. Suppliers shall not take any action that would violate, or cause McDonald's to violate, any applicable anti-bribery law or regulation, including the U.S. Foreign Corrupt Practices Act.

**AUDITS AND ASSESSMENTS:** McDonald's reserves the right to audit compliance with this Code. Audits are facility inspections that include employee interviews and a review of supplier records and business practices. Such audits are conducted by McDonald's or its approved monitoring firm. If an audit identifies a violation of this Code, suppliers shall act promptly to correct the situation to McDonald's satisfaction.

**BOOKS AND RECORDS:** Suppliers shall maintain accurate and transparent books, records and accounts to demonstrate compliance with applicable laws and regulations and this Code.

**CONFIDENTIALITY:** Suppliers shall safeguard McDonald's information by keeping it secure, limiting access, and avoiding discussing or revealing such information in public places. These requirements extend even after the conclusion of a supplier's business relationship with McDonald's.

**GRIEVANCE MECHANISM:** Suppliers shall create internal programs for handling reports of workplace grievances, including anonymous reports.

**WHISTLEBLOWER PROTECTION:** Suppliers are responsible for prompt reporting of actual or suspected violations of law, this Code, the Standards of Business Conduct for McDonald's employees, or the McDonald's Supplier Guidance Document. This includes violations by any employee or agent acting on behalf of either the supplier or McDonald's. Such programs shall protect worker whistleblower confidentiality and prohibit retaliation.

**ADDITIONAL STANDARDS:** In addition to complying with this Code, suppliers are responsible for complying with the McDonald's Supplier Guidance Document, and being aware of and supporting the Standards of Business Conduct for McDonald's employees.

Issued November 2012
Revision: v3.0
Replaces: 2000 v2
Page 1 of 1

Prepared by: Global Supplier Workplace Accountability Board
Authorized by: Chief Executive Officer

File Name: Supplier Code of Conduct

DocuSign Envelope ID: 8A8B3B01-1948-4625-9894-047B1F76A7F0

<u>**EXHIBIT C**</u>

<u>**McDonald's Code of Conduct and Ethics for Consultants**</u>

This Code of Conduct and Ethics for Consultants (the "**Code**") sets forth legal and ethical standards of conduct for consultants, including the employees and consultants/subcontractors of third party vendors and suppliers (collectively, "**Consultants**"), that render services to McDonald's (or any of McDonald's subsidiaries or affiliates) (collectively, "**McDonald's**"). This Code is intended to deter wrongdoing and to promote the conduct of all business in accordance with high standards of integrity and in compliance with all applicable laws and regulations.

If you have any questions regarding this Code or its application to you in any situation, you should contact the Compliance Director of McDonald's.

<u>**COMPLIANCE WITH LAWS, RULES AND REGULATIONS**</u>
McDonald's requires that all Consultants comply with laws, rules and regulations applicable to McDonald's wherever McDonald's does business. Consultants are expected to use good judgment and common sense in seeking to comply with all applicable laws, rules and regulations and to ask for advice when you are uncertain about them.

If you become aware of the violation of any law, rule or regulation by McDonald's, whether by its McDonald's employees, officers, directors or other Consultants, it is your responsibility to promptly report the matter to the Compliance Director of McDonald's. This Code should not be construed to prohibit you from testifying, participating or otherwise assisting in any state or federal administrative, judicial or legislative proceeding or investigation.

<u>**CONFLICTS OF INTEREST**</u>
Consultants must act in the best interests of McDonald's. You must refrain from engaging in any activity or having a personal interest that presents a "conflict of interest." A conflict of interest occurs when your personal interest interferes with the interests of McDonald's. A conflict of interest can arise whenever you, as a Consultant, take action or have an interest that prevents you from performing your duties and responsibilities honestly, objectively and effectively.

It is your responsibility to disclose any material transaction or relationship that reasonably could be expected to give rise to a conflict of interest to the Compliance Director of McDonald's.

<u>**INSIDER TRADING**</u>
Consultants who have material non-public information about McDonald's or other companies, including our suppliers and customers, as a result of their relationship with McDonald's are prohibited by law and McDonald's policy from trading in securities of McDonald's or such other companies, as well as from communicating such information to others who might trade on the basis of that information.

DocuSign Envelope ID: 8A8B3B01-1948-4025-9894-847B1F76A7F0

## CONFIDENTIALITY

Consultants must maintain the confidentiality of information entrusted to them by McDonald's or other companies, including our suppliers and customers, except when disclosure is authorized by a supervisor or legally mandated. You understand that, pursuant to Article 12 of the Master Construction Services Agreement (the "**Agreement**") dated DATE by and between McDonald's and VENDOR'S NAME, you may not use for your own purposes nor disclose to any third party any Confidential Information (as that term is defined in the Agreement) without the express written permission of McDonald's. The confidentiality obligations under the Agreement impose specific obligations and restrictions on you and such obligations will govern to the extent they are, in any way, contrary to the terms of this Code.

Third parties may ask you for information concerning McDonald's. Consultants (other than McDonald's authorized spokespersons) must not discuss internal McDonald's matters with, or disseminate internal McDonald's information to, anyone outside of McDonald's, except as required in the performance of their duties and after an appropriate confidentiality agreement is in place. This prohibition applies particularly to the inquiries concerning McDonald's from the media, market professionals (such as securities analysts, institutional investors, investment advisers, brokers and dealers) and security holders. All responses to inquiries on behalf of McDonald's must be made only by McDonald's authorized spokespersons. If you receive any inquires of this nature, you must decline to comment and refer the inquirer to your supervisor or one of McDonald's authorized spokespersons.

## HONEST AND ETHICAL CONDUCT AND FAIR DEALING

Keeping the best interests of McDonald's in mind, Consultants should endeavor to deal honestly, ethically and fairly with McDonald's suppliers, customers, competitors and employees. Statements regarding McDonald's products and services must not be untrue, misleading, deceptive or fraudulent. You must not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of materials facts or any other unfair-dealing practice.

## GIFTS AND GRATUITIES

The use of McDonald's funds or assets for gifts, gratuities or other favors to employees or government officials is prohibited, except to the extent such gifts are in compliance with applicable law, nominal in amount, and not given in consideration or expectation of any action by the recipient.

Consultants must not accept, or permit any member of his or her immediate family to accept, any gifts, gratuities or other favors from any customer, supplier or other person doing or seeking to do business with McDonald's, other than items that do not nor could reasonably be expected to affect the recipient's judgment or actions on behalf of McDonald's.

Common sense and moderation should prevail in business entertainment engaged in on behalf of McDonald's. Consultants should provide, or accept, business entertainment to or from anyone doing business with McDonald's only if the entertaining is infrequent, modest and intended to serve legitimate business goals.

DocuSign Envelope ID: 8A8B3B01-2948-4625-9894-B47B1F76A7E0

Bribes and kickbacks are criminal acts, strictly prohibited by law. You must not offer, give, solicit or receive any form or bribe or kickback anywhere in the world.

## ACCURACY OF BOOKS AND RECORDS AND PUBLIC REPORTS

Consultants must honestly and accurately report all business transactions. You are responsible for the accuracy of your records and reports. Accurate information is essential to McDonald's ability to meet legal and regulatory obligations.

You may report violations of this Code, on a confidential or anonymous basis, by contacting the Compliance Director of the Company by fax (630-623-7125), mail (McDonald's Corporation, P.O. Box 4567, Oak Brook, Illinois 60522-4567) or e-mail (business.integrity@us.mcd.com) or telephone at 1-800-261-9827. While we prefer that you identify yourself when reporting violations so that we may follow up with you, as necessary, for additional information, you may remain anonymous if you wish.

Failure to comply with the standards outlined in this Code will result in termination of the Agreement. Certain violations of this Code may require McDonald's to refer the matter to the appropriate governmental or regulating authorities for investigation or prosecution. Moreover, any supervisor who directs or approves of any conduct in violation of this Code, or who has knowledge of such conduct and does not immediately report it, also will be subject to disciplinary action, up to and including discharge for cause.

DocuSign Envelope ID: 8A8B3B04-1948-4625-9894-B47B1F76A7F0

# CODE OF CONDUCT
## ACKNOWLEDGEMENT PAGE

I, Ruben Freeman, certify that:
> *(Print Name Above)*

1.  I have received and carefully read the McDonald's Code of Conduct and Ethics for Consultants.

2.  I have had ample opportunity to ask questions and seek clarification with respect to the McDonald's Code of Conduct and Ethics for Consultants.

3.  I understand the McDonald's Code of Conducts and Ethics for Consultants.

4.  I have complied and will continue to comply with the terms of the McDonald's Code of Conduct and Ethics for Consultants.

5.  I understand that if I fail to comply with the terms of the McDonald's Code of Conduct and Ethics for Consultants, the Agreement (or my services under the Agreement) may be terminated.

6.  I understand that any breach of the McDonald's Code of Conduct and Ethics for Consultants by me will cause McDonald's irreparable harm and, in addition to any other remedies which may be available, McDonald's will have the right to, and I consent to, immediate injunctive relief against the breach or threatened breach of my obligations, without proof of actual damages and without the posting of bond or other security. I further agree to pay all costs and attorney's fees McDonald's incurs in enforcing the terms of the McDonald's Code of Conduct and Ethics for Consultants.

7.  I consent to the jurisdiction of the State of Illinois for purposes of enforcing the McDonald's Code of Conduct and Ethics for Consultants.

8.  I am an employee/consultant/sub-contractor of VENDOR'S NAME ("**Vendor**") and not an employee of McDonald's or any of McDonald's subsidiaries or affiliates. As an employee/consultant/sub-contractor of Vendor, I will look solely to Vendor (if applicable) and not to McDonald's, for the payment of all employee benefits and federal, state and local taxes on my behalf. I further understand and agree that I am not entitled to any employee benefits offered to employees of McDonald's or any of McDonald's subsidiaries or affiliates.

DocuSigned by:

*Ruben Freeman*

3D7F110E15EE4B9...

_____

Signature

Date: _____  12/11/2014

DocuSign Envelope ID: 8A8B3B01-1948-4625-9834-D47B1F76A7E0

**EXHIBIT D**
**FORM OF CONFIDENTIALITY AGREEMENT**

**INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT**

This Intellectual Property and Confidentiality Agreement ("Agreement") is entered into and is effective as of that date by and between _____ ("Contractor") and _____ ("Subcontractor").

WHEREAS, Subcontractor has entered into an oral or written agreement to provide supplies, materials, or services for the construction, renovation, or repair of a McDonald's restaurant or any portion of a McDonald's restaurant; and

WHEREAS, Contractor has or will provide Subcontractor with certain Proprietary Information (as defined below) for the limited purpose of performing construction related services for a McDonald's restaurant;

NOW, THEREFORE, in consideration of the foregoing and as a condition to the disclosure of Proprietary Information to Subcontractor, Contractor and Subcontractor hereby agree as follows:

1.       The term "Proprietary Information" means (a) any and all information, documents, material, data, or procedures in any form (whether oral, written, electronic, digital, photographic, or otherwise) relating to McDonald's USA, LLC, ("McDonald's"), its business, financial information, operations, policies and procedures, products, vendors, supplier relationships, trade secrets, building plans, equipment plans and/or specifications, construction methods or means, know-how, strategies and prospects; (b) any information, material, manuals, documents, or data about McDonald's obtained, discovered, or accessed by Subcontractor during the course of meetings or discussions with Contractor and/or its representatives or agents; and (c) any information, material, manuals, data, ideas, designs, processes, or documents about McDonald's obtained, accessed, or developed while performing services for Contractor.  Proprietary Information may be furnished to Subcontractor either orally, in writing, by inspection, through computer, tape or other electronic, mechanical, visual, digital, or graphic media.  *For purposes of this Agreement, Proprietary Information shall not include any information which is generally available to the public other than as a result of disclosure by Subcontractor.*

2.       All Proprietary Information will remain confidential in accordance with this Agreement. Subcontractor agrees not to release or disclose any Proprietary Information to any employee, agent, or third party unless said individual or entity executes a confidentiality agreement containing provisions that are at least as restrictive as those contained herein or agrees to be bound by this Agreement.  Without Contractor's prior written consent, Subcontractor, its employees, agents, and Subcontractors will not, directly or indirectly, (a) use the Proprietary Information for any purpose other than in connection with its performance of services for Contractor and for the benefit of McDonald's or its franchisees(s).

3.       In the event the Subcontractor becomes legally compelled to disclose any of the Proprietary Information, it will provide immediate notice to Contractor and McDonald's at the address below, so they may seek a protective order.

4.       Upon receipt of written notice from Contractor or immediately upon termination of its agreement with Contractor, Subcontractor will promptly deliver to Contractor and/or destroy (a) all written or tangible materials (including, by way of example and not of limitation, documents, notes and other writings in paper, electronic, or digital form) computer disks, tapes and printouts) containing or reflecting any Proprietary Information, without retaining any copies, summaries, analyses or extracts thereof; and (b) all written or tangible materials whatsoever which have been derived from and, or prepared by Subcontractor.

5.       Subcontractor acknowledges that a breach of any of the provisions of this Agreement will have a material and adverse effect and damages arising from such breach may be difficult to ascertain.

D-1

Subcontractor agrees that in addition to, and without limiting any other right or remedy Contractor may have, Contractor is entitled to equitable relief, including injunction and specific performance.

6.      Subcontractor agrees to indemnify, defend and hold harmless Contractor, McDonald's and their respective officers, directors, employees, affiliates, franchisees, agents and representatives from and against any and all losses, claims, expenses, costs or fees including reasonable attorneys' fees and litigation costs (collectively the "**Losses**") relating to: the unauthorized disclosure or use of the Proprietary Information by Subcontractor, Subcontractor's officers, directors, employees, affiliates, agents or sub-contractors.

7.      This Agreement will be binding on Subcontractor's successors and assigns and shall inure to the benefit of, and be enforceable by, the successors and assigns of Contractor.

8.      In the event that any of the provisions hereof are held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions shall remain enforceable to the fullest extent permitted by law.

9.      This Agreement may be waived, amended, or modified only by an instrument in writing signed by the party against whom such waiver, amendment or modification is sought to be enforced, and such written instrument shall set forth specifically the provisions of this Agreement which are to be so waived, amended or modified.

10.    This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have duly caused this Agreement to be executed as of the date first above written.

**CONTRACTOR**                                    **SUBCONTRACTOR**


By _____        By _____

Its _____        Its _____

Address                                            Address


_____                    _____


_____                    _____


McDonald's Notice Address:
McDonald's USA, LLC
2915 Jorie Boulevard
Oak Brook, 60523